933 So.2d 107 (2006)
George G. LEVIN and Gayla Sue Levin, Appellants,
v.
Ira LANG, Appellee.
No. 3D05-1936.
District Court of Appeal of Florida, Third District.
May 31, 2006.
*108 Woodrow "Mac" Melvin, Jr., Miami, for appellants.
Frederick Charles Sake, Miami Beach, for appellee.
Before GERSTEN, RAMIREZ, and SHEPHERD, JJ.
RAMIREZ, J.
George and Gayla Levin, the sellers, appeal from a final judgment in favor of Ira Lang, the buyer, granting specific performance of a contract for the sale of commercial property. We reverse, finding that the Levins' written notice was sufficient to notify Lang to elect whether to take title "as is" or accept the return of his deposit.
In June 2003, the parties signed a contract for the purchase and sale of commercial property in Miami-Dade County, Florida, located at 101 N.E 40th Street, for an all cash purchase price of $796,750.00. The contract provides that the buyer shall notify the seller of any title defect and that the seller then has thirty days thereafter to cure the defect. It also provides, "Seller may elect not to cure defects if Seller reasonably believes that any defect cannot be cured within the [30 day] Curative Period." The contract further states, "Buyer will have 10 days from receipt of notice of Seller's inability to cure defects to elect whether to terminate this contract or accept title subject to existing defects and close the transaction without a reduction in purchase price." The contract set a closing date of July 4, 2003. Pursuant to that *109 agreement, Lang delivered to the Levins' real estate broker $75,000.00 for the deposit and delivered to his own attorney the balance of the cash to close, which was $749,468.11.
Prior to the closing, Lang's attorney informed him that a lien search showed that Ethan Allen, Inc. had a $692,760.00 judgment lien on the subject property as a result of a Broward County judgment against the Levins. Before entering into the contract with Lang, the Levins posted a supersedeas appeal bond in the amount of $845,167.20, which stayed the execution of this judgment. It is uncontested in the record that the Ethan Allen judgment was a lien against the property, and thus, a title defect. It is also uncontested that the supersedeas bond did not remove this lien. Lang's attorney put the Levins on notice that they had to cure this defect.
The Levins issued Lang a written notice on July 24, 2003, addressed to Lang's attorney, stating, "As required by the contract, please have your client advise the Sellers in writing within 10 days as to whether or not your client is willing to accept the title subject to this alleged defect." The notice further stated that the Levins would fully indemnify Lang against any claim arising from the Ethan Allen, Inc. judgment lien. Lang's attorney replied on August 4, 2003, stating that the Levins needed to get a new bond in order to cure the title defect and proceed with the closing. The Levins did not cure the defect. Attorneys' Title Insurance Fund refused to issue title insurance to Lang, so the closing did not take place.
Lang then sued the Levins for specific performance of the contract to require the Levins to sell Lang the property. The Levins admitted that the parties had an agreement for the purchase and sale of the property but asserted that (1) they gave notice to Lang that they could not, through diligent effort, correct the title defect; (2) Lang refused to accept title "as is" pursuant to the contract, thus the contract terminated; and (3) they were entitled to damages because Lang's action constituted a slander of title on the property.
After a non-jury trial, the court entered a ten-page judgment, finding that the uncontroverted facts showed that the Levins would be required to make extraordinary efforts or expenditures pursuant to section 55.10, Florida Statutes (2002), to secure a lien bond for $1,024,717.38, which was beyond their duty, according to Blackmon v. Hill, 427 So.2d 228 (Fla. 3d DCA 1983). However, the court found that Lang showed by clear and convincing evidence that the Levins defaulted by failing to provide proper notice of the inability to cure any defect within the curative period. The court thus entered final judgment in Lang's favor and ordered the sale of the property.
The Levins correctly contend on appeal that it was error to rule that their written notice was insufficient, where that notice identified the contract, offered to close "subject to" the title defect, and gave Lang ten days to decide, "as required by the contract." They also correctly contend that it was error to rule that their notice was insufficient where Lang's attorney, to whom it was addressed, testified at trial that he understood what it meant.
To invoke the remedy of specific performance, the purchaser must show by "clear, definite and certain proof" that the seller failed to exercise reasonable diligence in clearing the title defects. See Blackmon, 427 So.2d at 230. Reasonable diligence requires "such actions as are consistent with good faith and appropriate in view of the circumstances." Id.
The Levins attorney requested that the agent who issued the supersedeas bond *110 write the new bond to clear the title defect. According to the evidence presented at trial, a second bond in the amount of $1,024,717.38 would have been required to lift the lien in Miami-Dade County. The trial court properly found that the Levins had exhausted all reasonable efforts to cure the defect in their title before giving the "as is" notice to Lang. Further efforts would have required "extraordinary efforts or expenditures," which was beyond their duty, according to Blackmon. See also Castigliano v. O'Connor, 911 So.2d 145 (Fla. 3d DCA 2005).
However, we disagree with the trial court's finding that the Levins' notice was legally insufficient. The trial court ruled that the July 24, 2003 written notice was legally insufficient because it had not "specifically declared that they [sellers] were unable to reasonably cure the title defect within the curative period." The contract allowed the Levins to notify Lang if they could not reasonably cure a title defect and to require Lang to decide within ten days whether to take title "as is" without a decrease in the purchase price or to accept the return of the deposit and a cancellation of the contract. The Levins' notice, which was addressed to Levin's real estate attorney, identified the contract, identified the unpaid judgment that was the title defect, and offered to close "subject to" the judgment. It further stated:
As required by the contract, please have your client advise the Sellers in writing within 10 days as to whether or not your client is willing to accept the title subject to this alleged defect.
It further stated that the Levins would fully indemnify Lang against any claim arising from the lien of the Ethan Allen, Inc. judgment. We find that the omission of the words "unable to cure," or their equivalent, did not render the Levin's notice legally insufficient.
Lang's real estate attorney testified at the non-jury trial that he understood what this notice meant. The following exchange took place on cross-examination:
LEVINS' ATTORNEY: Q. Then on July 24th, Mr. Preve, who is a business manager for Mr. Levin, he sent you a notice under the contract that said that this [the unpaid judgment] was a problem; he did not think he would be able to remove it. He was invoking the clause of the contract that said the buyer has to either take the property as-is, within ten days, or accept a return of deposit and a cancellation of the deal. That was the type of notice that he sent you, right?
LANG'S ATTORNEY: A. There was a notice to that effect. The date  I can identify it, if you like.
(emphasis added).
Lang's attorney agreed that this was the type of notice that meant the Levins did not think they would be able to fix the title defect. Lang's attorney replied to the notice within ten days of its receipt, just as the contract required. He never objected to the sufficiency of the notice. Lang's attorney proceeded to reject the tender of title "as is" and threatened to sue if the title was not promptly conveyed to his client free of the defect. As such, it seems clear, that the Levins' July 24, 2003 letter was unambiguous and sufficient to put Lang on notice that the Levins had decided they could not cure the title defect through reasonable efforts and that Lang had to decide whether to take the title "as is." The notice's only defect appears to be that the words, "inability to cure," were not used. The trial court erred in ruling that the notice was insufficient due to the lack of this specific phrase.
We further note there is no evidence in the record indicating that Lang suffered any prejudice as a result of any alleged *111 deficiency in the notice. In fact, the evidence indicates he understood exactly what the notice meant and rejected the contract in a timely manner.
In sum, the Levins' written notice was sufficient to notify Lang to elect whether to take title "as is" or accept the return of his deposit. Accordingly, the trial court's entry of final judgment of specific performance is reversed and the case is remanded for entry of judgment in favor of the Levins.
Reversed and remanded.