490 So.2d 1005 (1986)
GALT VIEW APARTMENTS, INC., a/K/a Coral Ridge Towers South Co-Op, Appellant,
v.
Frank FAZIO, Appellee.
No. 84-2095.
District Court of Appeal of Florida, Fourth District.
June 18, 1986.
*1006 Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellant.
Barry A. Mandelkorn and John H. Pelzer of Ruden, Barnett, McClosky, Schuster & Russell, P.A., Fort Lauderdale, for appellee.
HERSEY, Chief Judge.
The subject of this appeal is a final judgment requiring appellant, Galt View, an association formed by and representing tenants in a cooperative apartment building, to specifically perform its contract to sell and convey to appellee, Frank Fazio, that portion of the property owned by Galt View which had been for the past several years leased to Fazio for the operation of a restaurant. The precise issue to be decided is whether there is substantial competent evidence to support the trial court's finding that Galt View failed to make a diligent, good faith effort to satisfy a condition precedent contained in the contract. A subsidiary issue is the appropriateness of the remedy prescribed by the final judgment.
Galt View holds title to the land upon which its cooperative apartment building is situated and an adjacent tract upon which Fazio has operated a restaurant since 1970. The land is encumbered by a mortgage held by Connecticut General Life Insurance Company which is, in turn, guaranteed against default by the Federal Housing Authority (FHA), now known as the Department of Housing and Urban Development (HUD).
Galt View and Fazio entered into a Memorandum of Understanding in October 1982 which contemplated purchase by Fazio of the parcel leased to him for a total purchase price of $1,100,000. The memorandum provided, in pertinent part, that if Galt View was successful in obtaining Connecticut General's agreement to release this parcel from its mortgage, the parties would then enter into a purchase and sale agreement which would be subject to the approval of HUD and the members of the cooperative association. It was also provided, however, that if Connecticut General required Galt View to pay for the release then Galt View had the option to terminate the transaction.
Connecticut General agreed to release the parcel for a one-time payment of $100,000 to be credited against the principal sum due under the mortgage. Galt View, electing not to terminate, prepared a purchase and sale agreement which was executed by both parties and which was expressly made "subject to the approval of HUD and the members of" the cooperative association.
After being fully advised of the particulars of the transaction by the Board of Directors through distribution of handbills and two special meetings, the members of the association approved the agreement by the narrow margin of 149 favorable votes to 143 against.
Galt View then made application to HUD for approval and in June 1983 HUD rejected the proposal. Rejection was apparently based upon the fact that if the financial aspects of the transaction were restructured to comply with requirements HUD intended to impose, there would not only be a loss of the cash for investment which Galt View had anticipated would be generated by the sale, but also an out-of-pocket cash expense of $39,407 which Galt View would be required to pay. Galt View considered this rejection as a termination of its obligations under the contract by virtue of failure of the condition precedent requiring HUD approval. It took no further action. Appellee, Fazio, on the other hand, proceeded to negotiate with HUD and ultimately presented to Galt View several alternative methods of obtaining the requisite approval.
Upon Galt View's refusal to proceed in the transaction, the instant action for specific performance was commenced, culminating in a final judgment enforcing the *1007 purchase and sale agreement. The theory upon which the trial court proceeded was that Galt View failed to make a diligent, good faith effort to obtain performance of the condition precedent (providing for HUD approval), the consequences of which are that Galt View is held to have waived that condition and is required to perform despite HUD's rejection. There are obvious theoretical difficulties involved in this solution to the problem where HUD is not a party and cannot be compelled to give its approval under any circumstances; however, the practicalities of the situation are that alternatives apparently exist which are palatable to HUD, and we therefore leave the theoretical impossibility of performance to another day.
The initial inquiry is whether the letter application to HUD was sufficient in and of itself to satisfy the requirement of a diligent, good faith effort to satisfy the condition precedent. There is nothing on the face of the application to indicate to the contrary. Appellee relies on two circumstances to erode this appearance of good faith.
First, the requirements for obtaining a partial release of mortgaged property under HUD guarantee are contained in a handbook, a copy of which was in the possession of the Board of Directors of Galt View for a considerable period of time preceding preparation of the application. Testimony demonstrated that several members of the board were extremely sophisticated in the areas of finance and dealing with government agencies. Appellee maintains and appellant denies that given the specific requirements for release spelled out in the handbook, the application, which did not comply with those requirements, was an exercise in futility, doomed to failure, and thus not a good faith effort to obtain the release.
Secondly, the evidence discloses that prior to submission of the application and, to some extent, during its consideration by HUD, various members of the vocal minority, the 143 members voting against the sale to Fazio, mounted a letter-writing campaign, contacting not only HUD but also other governmental entities. Appellee asserts that this campaign undermined confidence in the fact that a majority of members had approved the transaction and also raised the question of whether the sale was in the best interests of anyone other than Fazio, yet the Board of Directors did nothing to counter the effect of this correspondence except to respond to direct inquiries from HUD concerning matters contained in two or three of these letters.
These two circumstances, according to appellee, combined to render unfavorable consideration by HUD a foregone conclusion; therefore, the fact of application itself is insufficient as a showing of a diligent, good faith effort on the part of Galt View to obtain the required partial release. The trial court apparently accepted this view and proceeded to consider whether subsequent events shed light on the issue of good faith. Given the factual nature of the inquiry to this point, we are unable to say that the trial court clearly erred in making this preliminary but necessary determination. We also agree with the conclusion inherent in the trial court's undertaking to review subsequent events that the facts surrounding the application are likewise insufficient, standing alone, to establish bad faith. We therefore turn to an examination of the alternatives that were available to Galt View after the initial rejection and which Galt View declined to consider or pursue. To the extent that the law imposes a duty on Galt View to do more than merely submit an application, which duty will be subsequently considered, the reasonableness of the alternatives, their burdens and benefits, and Galt View's unwillingness to consider them, are probative of the issue of good faith.

FIRST ALTERNATIVE
The tract to be released was variously appraised as having a fair market value from $550,000 to $900,000. It was to be sold to Fazio for $1,100,000. HUD set its value for release purposes at $800,000. HUD regulations required that in order to *1008 obtain a partial release from a mortgage the principal balance must be paid down in an amount at least equal to the current value of the parcel to be released. The application proposed a paydown of only $100,000. There is evidentiary support, not uncontested, for the foregoing, from which it is argued that only by following a procedure variously designated as an appeal or a waiver proceeding could the transaction as structured have any chance of being approved. There is testimony that, if such procedure had been followed, approval was a real possibility. The burdens and benefits inuring to the parties under this alternative are self-evident.

SECOND ALTERNATIVE
The mortgagee, Connecticut General, had approved the payment of $100,000 to obtain a partial release. Only HUD remained as an obstacle. However, by paying $67,000 to Connecticut General, in addition to the principal paydown, the HUD guaranty of the entire mortgage could be terminated; thus HUD approval would no longer be a factor. Fazio agreed to pay this sum on behalf of Galt View, in addition to the purchase price and costs and expenses. Galt View declined, now arguing that adverse economic consequences would have resulted from exercise of this option.
The scenario is that the association paid to Connecticut General an annual fee of one-half of one percent of the outstanding principal balance of the mortgage loan as a premium for the HUD guaranty. This premium was combined with similar payments received by Connecticut General and held in a fund which is available in the event of default on a guaranteed mortgage. These funds are invested by Connecticut General and at the end of each year earnings on the fund not required to cover defaults are distributed back to the mortgagors. In current history this device has resulted in a substantial economic benefit to Galt View. Between 1980 and 1983, Galt View paid in approximately $130,000 but received back $237,000, or $25,000 per year more than it paid in. Such payments are fortuitous, however. They are not guaranteed, resulting only from a favorable economic climate during any particular year. The only certainty is one of expense: the annual premium, which would be eliminated by the adoption of this alternative.

THIRD ALTERNATIVE
In lieu of initiating the appeal or waiver process, Galt View could simply comply with the requirements initially suggested by HUD. This would involve a payment on mortgage principal of $800,000, representing the value of the parcel to be released. The burden on Galt View of exercising this option is obvious. The sale price is $1,100,000. From these proceeds Galt View would be required to pay taxes of $333,407 in addition to the $800,000 principal payment, resulting in a deficit in excess of $30,000. Appellee, Fazio, offered to pay the amount of this deficit in addition to the sales price. Galt View declined on the basis that it would still be without an income-producing asset.

ANALYSIS
The purchase and sale agreement contained the condition precedent that the approval of HUD be obtained. Appellant takes the position that its duty to make a diligent, good faith effort to fulfill the condition was limited to and was thus exhausted by HUD's rejection of a facially-sufficient application. Appellee contends that the application, process was tainted and, in addition, that appellant's refusal to accept a reasonable alternative to its initial flawed position establishes that there was no good faith in fact. The question posed is the extent of the duty that should be imposed on a party obligated by contract to seek the performance of a condition precedent.
Appellant relies on Walker v. Benton, 407 So.2d 305 (Fla. 4th DCA 1981), for the proposition that rejection of an application by the authority whose approval is necessary automatically terminates the contract. The Walker case and its rationale have no application here for a number of reasons, not the least of which is that the issue in *1009 Walker was waiver and estoppel rather than good faith and diligence.
Meyers v. Cunningham, 415 So.2d 802 (Fla. 3d DCA 1982), is cited by appellant for the proposition that once an application is rejected, a party obligated to fulfill a condition precedent has no further obligation and is excused from performance of the main contract. In Meyers, no issue was made of the good faith of the application or of the surrounding circumstances, nor does it appear that any alternatives were available. We have no quarrel with the holding and rationale of Meyers, but conclude that they have little relevance here.
Nor does Deeb v. Field, 311 So.2d 736 (Fla. 3d DCA 1975), to which our attention is directed by appellant, lend persuasive authority to either party's view of the issue under consideration. The contract in that case specifically required additional action in the event of an initially unsuccessful attempt to obtain satisfaction of a condition precedent. We do not accept the proffered opportunity to infer that in the absence of a specific requirement in the contract, under no circumstances would more than an initial, facially-sufficient application be required.
Both parties rely on Lee v. Bowlerama Enterprises, Inc., 368 So.2d 913 (Fla. 3d DCA 1979), as supportive of their respective views of the somewhat similar issue involved here. The controversy in the Lee case involved a representation that the zoning ordinance applicable to certain property would permit its use as a nightclub with a liquor license. The fact that the zoning did not permit as large an establishment as appellant had contemplated was found insufficient to avoid the transaction where the zoning did in fact permit use of the property as a nightclub with a liquor license. Thus, the subjective intent of a party, not incorporated into the written agreement, may not be relied upon to avoid enforcement of performance where the condition, as written, has been or could be met.
In Steffens v. Urgo, 425 So.2d 658 (Fla. 4th DCA 1983), we held that where a sales contract contains a contingency similar to the one here, the law imposes a requirement that there be a good faith effort to comply with or to seek compliance with the contingency. Where time is a factor, diligence is an added ingredient of the effort required.
The contract between Galt View and Fazio was conditioned upon approval by HUD of release of the parcel from the Connecticut General mortgage. Given the preliminary finding that denial of the initial application was insufficient, on the facts of this case, to exhaust Galt View's duty to make a diligent, good faith attempt to obtain satisfaction of this condition precedent, the trial court could have determined, on the evidence, that refusal even to attempt to develop alternatives established that Galt View had not proceeded in good faith. This determination was reinforced by Galt View's subsequent refusal to consider any of the alternatives developed by the negotiations of Fazio. Acknowledging that the question is a close one, we affirm on the basis that the trial court's finding of lack of a good faith effort to obtain satisfaction of the condition precedent that approval of HUD be obtained is supported by substantial competent evidence.
Finally, appellant argues that, even if appellee is entitled to relief, in order to preserve the financial structure of the agreement as originally contemplated by the bare majority of members of the cooperative association who voted to approve the transaction, relief should be limited to requiring only that Galt View pursue the "waiver or appeal proceeding" and no other alternative. The final judgment requires that Galt View take whatever steps are required to obtain the approval of HUD; it follows that merely following the procedure outlined as the First Alternative and obtaining a rejection would not extinguish Galt View's obligations under the contract.
*1010 The final judgment also binds Fazio, in the event the Second Alternative is pursued, to pay the $67,000 required to terminate the HUD guaranty, thus obviating the need for HUD approval of the partial release. Fazio has not cross appealed this determination. While the final judgment does not bind Fazio to pay to Galt View the amount of the cash deficit that would result from exercising the Third Alternative, although he had agreed to pay this amount as part of the negotiations, it is reasonable to assume he would continue to accept this liability should Galt View elect this alternative, since it would result in a cash requirement of approximately one-half of the $67,000 required by the Second Alternative.
Finally, Galt View is not limited to the three alternatives negotiated between HUD and Fazio and may be able to negotiate even more favorable terms for obtaining HUD approval or otherwise satisfying the condition precedent.
It may be, as appellant suggests, that the financial picture of Galt View after performance pursuant to the final judgment may not be reflective of "the very limited approval given by the cooperative to the transaction as a whole," nor responsive to "the significant concerns of HUD that any partial release be supported by a significant majority of the members." Neither consideration carries the day, however. The approval given by the members of the cooperative was legally sufficient (a majority of the members) and was limited in the written contract only to requiring the approval of HUD and the cooperative. It was not limited by nor subject to the precise financial structure allegedly contemplated by one of the contracting parties. Even if it were so limited, that limitation falls with the condition precedent itself upon a finding of failure to make a diligent, good faith effort to seek performance of that condition.
Accordingly, we affirm.
DELL and GUNTHER, JJ., concur.