891 So.2d 1147 (2005)
Dennis P. KISSMAN, Nancy R. Kissman, and Marina Management Services, Inc., Appellants,
v.
Ron PANIZZI, John Detweiler, and Helene Farrell, Appellees.
No. 4D04-723.
District Court of Appeal of Florida, Fourth District.
January 26, 2005.
*1148 Thomas J. Tighe and Leonard Wilder of Tucker & Tighe, P.A., Fort Lauderdale, for appellants.
Lynne S.K. Ventry of Lynne S.K. Ventry, P.A., Delray Beach, for appellee Ron Panizzi.
GROSS, J.
Dennis and Nancy Kissman, the sellers, appeal a final judgment granting specific performance of a commercial real estate purchase contract to Ron Panizzi, the buyer. Panizzi cross-appeals the trial court's failure to award monetary damages in addition to specific performance.
We affirm on all issues. The real estate contract did not permit the sellers to terminate for the buyer's failure to secure a loan commitment. On the cross-appeal, the buyer's damages incident to specific performance were offset by the sellers' costs.
The central issue in the case is whether the buyer complied with the financing provision of the contract.
By the real estate contract, the sellers agreed to sell a commercial building for *1149 $500,000. The contract called for a down payment of $5,000, with $20,000 to be deposited within ninety days. Included in the contract was the following language:
1. The "Effective Date" of this Contract is the date on which the last of the Parties signs the latest offer. Time is of the essence in this Contract....
....
3. THIRD PARTY FINANCING: Within 60 days from Effective Date ("Application Period") Buyer will, at Buyer's expense, apply for third party financing in the amount of $400,000... to be amortized over a period of 25 years ... with a fixed interest rate not to exceed 7.5% .... Buyer will notify Seller immediately upon obtaining financing or being rejected by a lender. If Buyer, after diligent effort, fails to obtain a written commitment within 90 days from Effective Date ("Financing Period"), Buyer may cancel the Contract by giving prompt notice to Seller and Buyer's deposit(s) will be returned to Buyer in accordance with Paragraph 9.
....
4. TITLE .... (a) Evidence of Title: Seller will, at ... Seller's expense and within 10 days ... from date Buyer meets or waives financing contingency in Paragraph 3, deliver to Buyer ... a title insurance commitment....
The contract required a closing date on or before September 30, 2002. The "Effective Date" of the contract was March 22, 2002.
To secure financing, the buyer contacted a bank in April and May, 2002, with which he had a preexisting relationship. With a closing not scheduled until September, 2002, the bank told the buyer that it was too early to submit a formal loan application. It was the bank's policy not to entertain a loan application more than ninety days away from the closing. A senior financial specialist from the bank testified that the buyer had consulted with her numerous times prior to May 22, 2002 to discuss the loan; she had received everything she needed from the buyer to process the loan.
On June 7, 2002, the buyer told Nancy Kissman that he could not yet obtain a loan commitment because it was too early to apply for a loan. He indicated that he intended to go forward with the purchase and was going to complete a survey of the property the next day.[1] The survey was completed on June 8.
On June 10, the sellers' attorney wrote to the buyer's attorney, indicating that the Kissmans were canceling the contract because the buyer had not yet applied for financing. On June 20, the buyer paid the additional $20,000 deposit to the escrow agent with notice to the sellers.
The heart of this appeal is whether the contract authorized the sellers to cancel because the buyer failed to comply with the "Third Party Financing" provision of the contract. The trial court correctly concluded that the sellers did not have the right to cancel, because the financing provision authorized only the buyer to cancel if the buyer did not secure a financing commitment.
The interpretation of a contract is a question of law for which this court applies a de novo standard of review. See McPhee v. Paul Revere Life Ins. Co., 883 So.2d 364, 367 (Fla. 4th DCA 2004).
The contract's "Third Party Financing" paragraph indicates that the buyer will "apply" for financing within sixty days of the "Effective Date." The provision further *1150 states that, "If Buyer, after diligent effort, fails to obtain a written commitment within 90 days from Effective Date, Buyer may cancel the Contract by giving prompt notice," and receive his deposit back. (Emphasis added).
Nothing in this language gives the Sellers the right to cancel the contract if the Buyer does not secure financing; only the buyer may cancel if, "after diligent effort," he fails to obtain a written loan commitment within ninety days of the effective date.
By specifying that the buyer could "waive" the financing contingency, paragraph 4 of the contract reinforces the interpretation that only the buyer, and not the sellers, had the right to terminate the contract. That paragraph states that the sellers must provide evidence of title to the buyer "within 10 days" from the date the buyer "meets or waives financing contingency." This clause means that the buyer may elect to proceed with the contract, to "waive" his right to terminate, if he is unable to secure a loan commitment "within a ninety-day time frame."
As an expert testified at trial, many real estate contracts allow either a buyer or a seller to cancel if the buyer does not obtain a financing commitment within a certain time frame. These contracts protect both parties; a buyer cannot be forced to close on a property he cannot afford and a seller faced with a penurious buyer may terminate the contract and seek another purchaser, rather than wait until closing and be left with legal remedies against an empty pocket. As the expert testified, the financing provision in this contract did not contain such a bilateral right of termination.
The sellers analogize this case to Garcia v. Alfonso, 490 So.2d 130 (Fla. 3d DCA 1986). There, in a brief opinion, the court concluded that where "time is of the essence" in a contract, the failure of the buyer to comply with a financing contingency clause allowed the seller to terminate the contract. The problem with applying Garcia is that the opinion does not describe the contract language regarding the right of termination. The contract in this case, which allows the buyer to proceed to closing without obtaining a loan commitment, does not give the sellers a right to terminate. The contract's "time of the essence" is irrelevant to whether the buyer breached the contract. Whether the buyer did or did not do something by a specified date is of no significance. The contract allowed the buyer to never apply for financing and still proceed to close on the property.
On another issue, the sellers waived the issue of the buyer's lack of standing, because they did not raise the issue until closing argument. See Schuster v. Blue Cross & Blue Shield of Fla., Inc., 843 So.2d 909, 912 (Fla. 4th DCA), review denied, 852 So.2d 862 (Fla.2003) ("There is no question that lack of standing is an affirmative defense that must be raised by the defendant and that the failure to raise it generally results in waiver.").
The buyer's cross-appeal challenges the trial court's decision not to award damages. The buyer elected the remedy of specific performance rather than breach of contract, and contends that along with this remedy, he is entitled to all costs he has incurred due to the sellers' breach of contract.
The damages awarded incident to a decree of specific performance of a real estate contract are different from those awarded for breach of the same contract. See Walker v. Benton, 407 So.2d 305, 307 (Fla. 4th DCA 1981). Damages that flow from the grant of specific performance are limited to those which will return the parties to status quo at the time of the breach. Id. Thus,

*1151 [d]amages awarded in specific performance are a way of compensation to adjust the equities between the parties to place them in a position that they would have occupied had the contract been timely performed.... `The court is really requiring an accounting in its attempt to adjust the equities between both parties in order to return them to their relative position at the time of closing.'
Wiborg v. Eisenberg, 671 So.2d 832, 835 (Fla. 4th DCA 1996) (quoting Walker, 407 So.2d at 307).
In Walker, this court noted that a buyer of property who obtains specific performance is not entitled to the rent for alternative housing during the period between the seller's default and the actual closing. 407 So.2d at 307. While a buyer is entitled to "the rents and profits," this refers to the property that is the subject of the suit, and not a separate property which the non-breaching buyer was forced to rent because of the seller's breach. The court therefore distinguished the damages that would be awarded "incident to" a decree of specific performance from those awarded for breach of contract. Id.
Additionally, while a buyer is entitled to "the yield of the property," via rents and profits, the seller is entitled to a credit for all reasonable expenses, including property taxes, on the property since the scheduled closing date, as well as the legal rate of interest on the sale price since the scheduled closing date, to compensate the seller for the unavailability of the sale funds. See id. at 307; Roschman Partners v. S.K. Partners I., Ltd., 627 So.2d 2, 5 (Fla. 4th DCA 1993); Shelter Corp. of Canada Ltd. v. Bozin, 468 So.2d 1094, 1097 (Fla. 2d DCA 1985). The law deems this to be fair because the buyer receives the benefit of the appreciation in the property. See Roschman Partners, 627 So.2d at 5; Walker, 407 So.2d at 307.
Applying these principles to this case, the record shows that any damages the buyer was entitled to recover, such as rent and expenses incident to another mortgage, were offset by the legal rate of interest on the sale price and the sellers' expenses for the property since the closing date.
AFFIRMED.
POLEN and STEVENSON, JJ., concur.
NOTES
[1] The parties vigorously disagreed about the contents of the June 7 conversation. Since Panizzi was the prevailing party, on appeal he is entitled to the benefit of the most favorable view of the evidence.