IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

BOARDWALK AT DAYTONA
DEVELOPMENT, LLC,

      Appellant,

v.                                                                              Case No. 5D15-1944

PANORMITIS K. PASPALAKIS, ET AL.,

      Appellees.

_____/

Opinion filed November 18, 2016

Appeal from the Circuit Court
for Volusia County,
Dennis Craig , Judge.

David A. Monaco, John N. Bogdanoff, and
Christopher V. Carlyle, of The Carlyle
Appellate Law Firm, The Villages, for
Appellant.

Amy Brigham Boulris, Lauren Vickroy
Purdy, and Jonathan Kaskel, of Gunster,
Yoakley & Stewart, P.A., Miami, for
Appellees.

Allison D. Daniel, of Institute for Justice,
Miami, Amicus Curiae Brief, for Appellees.

EDWARDS, J.

      Neither law nor equity can furnish a sufficient description of land to be conveyed

where the parties have failed to do so.  Specific performance is only available to compel

the transfer of land that is specifically described in the parties' agreement alone or where its identity is clear from an agreement that is appropriately supplemented by parol evidence. The parties' agreement in this case contained only a general description of the land to be conveyed; however, it lacked a legal description, street address, or any other information to assist in the identification of the specific parcel of land. The ambiguity was not cured by the trial court's consideration of parol evidence. Indeed, in the course of litigation, the parties identified three different parcels of land of significantly different sizes, each of which fit the agreement's general description. Accordingly, we find that the trial court erred in decreeing specific performance by compelling the conveyance of one of those three parcels.

Boardwalk at Daytona Development, LLC ("BDD") appeals the final judgment decreeing specific performance of an agreement and compelling BDD to convey specific real estate to Panormitis K. Paspalakis, Eleny Lisa Psaros, and A.L. & P. Corporation (collectively "Appellees"). Though BDD raises several issues on appeal, our determination that specific performance was not an appropriate remedy renders the other issues moot.

This dispute arises from a public-private economic development project. BDD's predecessor obtained Appellees' property located on the Daytona Beach Boardwalk using the City of Daytona Beach's eminent domain power, but the land was purchased with private funds.[1] The Boardwalk Project contemplated the construction of buildings

---

[1] As noted in the amicus brief filed by Institute for Justice, the Boardwalk Project was similar in many respects to the facts of *Kelo v. City of New London*, 545 U.S. 469 (2005), in terms of the use of governmental condemnation power for private real estate development. In 2006, Florida reacted by amending its eminent domain statutes and

2

operating dually as hotels and residential condominiums. The structures would also contain retail space. To resolve the condemnation litigation, the parties entered into a mediated settlement agreement that set the price Appellees would receive for their property and granted Appellees an option to purchase and refurbish a specific building, which was located on the Boardwalk. The mediated settlement agreement was subsequently amended, providing Appellees with three different options to purchase and operate 7500 square feet of retail space on the Boardwalk.

Appellees chose the option that required BDD to transfer property to Appellees who, in exchange, would pay $250,000. The amended agreement did not contain a legal description or street address for the property to be conveyed to Appellees. However, the amended agreement indicated that the property would be adjacent to the Mardi Gras, a Daytona Beach business; that it would have a minimum of 50 frontage feet on the Boardwalk; and that it would have "sufficient land to build a 7500 square foot one story building, free of any and all liens." Appellees advised BDD they were "willing to close the purchase of the property as soon as the site and legal description have been confirmed."

BDD provided Appellees with a survey sketch and legal description of property that it proposed for the conveyance, stating that the 7682 square foot lot included 53.4 feet of Boardwalk frontage and would have sufficient area for construction of a 7500 square foot, one story building. Use of this lot would require locating the storm water vaulting system beneath the occupied building, an unusual design feature that caused concern to Appellees. Further, BDD insisted that the conveyed property would be subject to a

---

passing a constitutional amendment to prohibit the use of condemnation in similar situations. *See* Chapter 73, Florida Statutes (2007); Art. X, § 6(a), Fla. Const.

perpetual, irrevocable, and permanent negative easement for light, air, and unobstructed view for the benefit of BDD's adjacent property. Appellees objected, asserting that the amended agreement did not discuss any such easement.

BDD filed suit against Appellees, seeking a declaratory judgment that the property BDD tendered, including the negative easement, conformed to the amended agreement. Appellees counterclaimed, seeking damages and specific performance that would require BDD to transfer the land described in the amended agreement, i.e., sufficient to build a 7500 square foot, one story building with a minimum of 50 feet of Boardwalk frontage in fee simple, without restrictions.

During the pendency of the litigation, BDD submitted two site plans to governmental authorities. The first site plan was for a 17,350 square foot lot. This plan provided for the storm water system located under the building and arranged for the excavated soil to be deposited on the lot. The second site plan was for an 8594 square foot lot. In this second plan, the storm water system was located under the building and the excavated soil had to be deposited on the beach. BDD dismissed its complaint against Appellees, and defended against Appellees' amended counterclaim by asserting that there was no agreement to be specifically enforced because there was no meeting of the minds regarding the exact size, location, easements, and legal description of the property. In their second amended counterclaim, Appellees requested the court to order BDD to convey the parcel described in the first site plan or, in the alternative, to order BDD to convey the parcel described in the second site plan while ordering BDD to accept

4

the transfer of the excavated sand from the site plan to the dunes on its adjacent property.[2]

During the four-day nonjury trial, the parties' witnesses testified regarding the feasibility of locating a storm water system beneath an occupied building, how to dispose of the excavated soil, the terms of the amended agreement, and how those issues did or did not define what piece of land was "sufficient for a 7500 square foot building." In closing arguments, Appellees initially urged specific performance by forcing BDD to convey the 8592 square foot lot described in the second site plan. When the trial court remarked that the larger 17,350 square foot lot described in the first site plan might be more suitable, Appellees stated that they would accept either parcel. The final judgment decreed specific performance by ordering BDD to convey the land described in the first site plan to Appellees without the negative easement. BDD timely appealed.

"The decision whether to grant or withhold a judgement for specific performance is a matter within the sound discretion of the trial court which will not be disturbed on appeal unless clearly erroneous." *Muniz v. Crystal Lake Project, LLC*, 947 So. 2d 464, 469 (Fla. 3d DCA 2006) (citing *Henderson Dev. Co. v. Gerrits*, 340 So. 2d 1205, 1206 (Fla. 3d DCA 1976)). "[T]he right to exercise this judicial discretion does not extend to the power or authority to contravene the legal requirements which must exist to give a litigant grounds upon which he may invoke the remedy." *Id.* (alternation in original) (quoting *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005)). "A decree of specific performance . . . . can be granted only when '1) the plaintiff is clearly entitled to it, 2) there

---

[2] Paragraph one of the second amended counterclaim states that specific performance and money damages exceeding $15,000 are sought; however, money damages are never mentioned again nor are they sought in the ad damnum clause.

is no adequate remedy at law, and 3) the judge believes that justice requires it.'" *Invego Auto Parts, Inc. v. Rodriguez*, 34 So. 3d 103, 104 (Fla. 3d DCA 2010) (quoting *Castigliano*, 911 So. 2d at 148). In contrast, "[t]he interpretation of a contract involves a pure question of law for which [the appellate court] applies a de novo standard of review." *Muniz*, 947 So. 2d at 469 (citing *Kissman v. Panizzi*, 891 So. 2d 1147, 1149 (Fla. 4th DCA 2005)).

"In order for a court to grant specific performance, the parties must have entered into an agreement that is definite, certain, and complete of all its *essential terms.*" *Id.* (emphasis added) (citations omitted). "As a general rule, '[t]here is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds [and] the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case-by-case basis.'" *de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 682 (Fla. 1st DCA 2007) (alteration in original) (quoting *Socarras v. Claughton Hotels, Inc.*, 374 So. 2d 1057, 1060 (Fla. 3d DCA 1979)).

However, for land contracts, a description of the land to be conveyed is generally an essential part of the agreement. *See Rhode v. Gallat*, 70 So. 471, 472-73 (Fla. 1915). A "meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." *de Vaux*, 953 So. 2d at 681 (citing *Cent. Props., Inc. v. Robbinson*, 450 So. 2d 277, 280 (Fla. 1st DCA 1984) (additional citations omitted)).

Here, BDD argues that the term "sufficient land for a 7500 square foot building" is ambiguous and, therefore, an essential term of the contract was absent from the agreement. In support of this argument, BDD cites *Bay Club, Inc. v. Brickell Bay Club,*

6

*Inc.*, 293 So. 2d 137 (Fla. 3d DCA 1974). In *Bay Club*, the plaintiff "executed a written agreement with [defendants] to lease a portion of the Brickell Bay Club condominium which was then in the early stages of construction for the operation of a private club by [defendants]." 293 So. 2d at 138. "The agreement was contingent upon the defendants being able to obtain a zoning variance to permit the operation on the proposed club." *Id.* Plaintiffs subsequently filed a complaint for rescission of the agreement, alleging that defendants were in violation of the contract. *Id.* Defendants counterclaimed for specific performance. *Id.* Plaintiffs moved to dismiss the counterclaim on the basis that the contract was insufficient to "form a predicate for a claim of specific performance." *Id.* The trial court dismissed the counterclaim. *Id.*

The Third District affirmed, finding that the agreement, which described the leased area "as *approximately* 20,000 square feet without any designated location thereof in the 31 story building," lacked "so many of the essential elements of a lease for the operation of a business that the court for specific performance thereof, would have to write a comprehensive lease based on parol evidence which [it] may not and shall not do." *Id.* (emphasis added). Similarly, here, while the amended agreement indicated that the land to be conveyed was adjacent to the Mardi Gras property with a minimum of 50 frontage feet on the Boardwalk, it did not provide any further specifics that would assist in identifying the parcel of land. Instead, the amendment merely required BDD to convey "sufficient land" for a 7500 square foot building. While the Mardi Gras property may provide a starting point for the identification of the land, as did the thirty-one story building in *Bay Club*, the description in the amended agreement is too ambiguous to enforce via specific performance.

7

As the amended agreement did not specifically describe the exact property to be conveyed, the trial court considered and relied upon parol evidence offered by the parties regarding what would be "sufficient for the construction of a 7500 one story building." "[P]arol evidence is admissible to determine the description so long as the instrument itself shows that the parties *were contemplating a particular piece of property* – rather than an unspecified piece of property . . . or alternative descriptions . . . or property to be obtained later." *Bajrangi v. Magnethel Enters., Inc.*, 589 So. 2d 416, 418-19 (Fla. 5th DCA 1992) (footnotes omitted) (citing *Edmun Realty Corp. v. Kearns*, 28 So. 2d 834, 836 (Fla. 1947)). "[T]he description [of land] is sufficient if the reference to the property in the deed is such that the court, by pursuing an inquiry based upon the words of reference, is able to identify the particular property to the exclusion of all other property." *Id.* at 419. *But cf. Venema v. Tost*, 424 So. 2d 786, 787 (Fla. 3d DCA 1982) (reversing the trial court's granting of specific performance because the contract did not sufficiently describe the real property in question and holding that the "use of parol evidence to remove a patent ambiguity with respect to a legal description in a conveyance is error" (citations omitted)).

*Jordan v. Boisvert*, 632 So. 2d 254 (Fla. 1st DCA 1994), proves helpful in deciding this issue. In *Jordan*, the parties entered into a contract for the sale and purchase of real property. 632 So. 2d at 255. The "contract fixed the price, contained a description, and called for a survey to establish the exact legal description of the property to be conveyed." *Id.* Attached to the contract was a "sketch of the general area of the property." *Id.* Defendant subsequently contacted the plaintiff via mail and informed him that he would "not really know how many acres are involved until the survey is complete and the calculations are made." *Id.* The correspondence additionally provided boundary

8

landmarks for the property to be conveyed. *Id.* Pursuant to the agreement, plaintiff obtained a survey that indicated "the proposed sale involved 5.95 acres." *Id.* Defendant obtained a second survey that indicated that the proposed sale involved 5.40 acres. *Id.* Plaintiff subsequently obtained a third survey. *Id.* Plaintiff then filed a complaint for specific performance. *Id.* The trial court "ruled that the legal description in the contract was insufficient to allow a surveyor to locate and establish boundaries on the land." *Id.* at 256. On appeal, the plaintiff argued that the trial court erred in failing to consider appellee's letter in determining whether there was a clear and unambiguous description of the land to be conveyed. *Id.*

The First District affirmed and determined that the plaintiff did not show "that the trial court abused its discretion in denying specific performance of the written agreement signed by the parties." *Id.* at 257. The court indicated that "[f]undamental to a grant of specific performance of a contract for purchase and sale of property is 'whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries.'" *Id.* at 256 (quoting *Mogee v. Haller*, 222 So. 2d 468, 469 (Fla. 1st DCA 1969)). In determining that specific performance should not be granted, the court emphasized that:

> The fact that the surveyor performed three surveys, each of which varied the boundary lines of the property at issue, constitutes substantial evidence to support the trial court's finding that even considering the description in the contract for sale, attached drawing, and extrinsic evidence, the description was insufficient to permit a surveyor to establish the boundaries of the property.

*Id.* at 257.

9

Here, there were three different parcels of land identified as being potentially "sufficient" for the 7500 square foot building, with lot sizes ranging from 7682 to 17,350 square feet. Each of the three lots was adjacent to the Mardi Gras and each had a minimum of 50 feet Boardwalk frontage. However, neither the amended agreement alone nor the amended agreement as supplemented by the trial evidence established a meeting of the minds on what real estate was being bought and sold. Thus, the trial court erred in granting specific performance. We reverse the final judgment granting specific performance in favor of the Appellees and remand for entry of final judgment in favor of BDD.

REVERSED AND REMANDED.

SAWAYA and PALMER, JJ., concur.