# Third District Court of Appeal

## State of Florida

Opinion filed November 29, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-376
Lower Tribunal No. 15-7166
_____


**D & E Real Estate, LLC,**
Appellant,

vs.

**Jose Vitto,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Kaplan, Young & Moll Parrón PLLC, and Justin B. Kaplan and Matthew S. Sarelson, for appellant.

Berger Singerman LLP, and David L. Gay, for appellee.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

ROTHENBERG, C.J.

The defendant below, D & E Real Estate, LLC ("D & E"), appeals from the final judgment entered by the trial court granting the plaintiff, Jose Vitto's ("Dr. Vitto"), claim for specific performance. We affirm.

**SUMMARY OF THE EVIDENCE**

In 2002, David Cooper, Mel Cooper, Eric Ramos, and a fourth member of a limited liability company purchased twelve preconstruction units at the Fontainebleau condominium building in Miami Beach through the members' limited liability company. After a few years, the fourth member split from the limited liability company, and the remaining members, along with David Cooper's wife, Clara, formed Imperial Capital LLC ("Imperial") and took ownership of eight of the twelve condominium units. Sometime thereafter, Imperial fell behind on the mortgage payments and the banks commenced foreclosure proceedings.

In 2011, David Cooper and Ramos had a falling out with Mel Cooper, and ultimately Imperial transferred four of the units, including units 2601 and 2603, which are the subject of this lawsuit, to D & E. However, the foreclosure actions continued against Imperial.

The underlying action for specific performance stems from a January 28, 2014 contract between D & E and Dr. Vitto for the sale and purchase of units 2601 and 2603, which are two of the condominium units that were transferred from Imperial to D & E. The agreed upon sale price for these two units was $1,700,000.

After executing the contract, it is undisputed that Dr. Vitto timely paid the agreed-upon deposits in the amount of $170,000.

When D & E and Dr. Vitto entered into the subject contract, which had a projected closing date of March 31, 2014, units 2601 and 2603 were in foreclosure and a foreclosure sale date had been set for the sale of unit 2601. However, D & E moved to reschedule the foreclosure sale date based on D & E's contract to sell unit 2601 (and 2603) to Dr. Vitto, D & E's receipt of Dr. Vitto's $170,000 deposit, and D & E's representation that, based on the contract, it would be able to satisfy its debt to the foreclosing bank. The foreclosure court granted D & E's motion and rescheduled the foreclosure sale to April 9, 2014, which was after the projected closing date.

However, prior to the closing date, Mel Cooper, on behalf of himself and Imperial, filed for bankruptcy in the Southern District of New York, thus creating a cloud on title. In the bankruptcy case, Imperial claimed that it had an interest in the subject units despite the fact that Imperial had transferred the units to D & E in 2011. On March 4, 2014, David Cooper, Ramos, and Clara Cooper (David Cooper's wife) filed a motion to dismiss the bankruptcy action, claiming that Mel Cooper had no authority to file for bankruptcy on behalf of Imperial.

A few days later, on March 6, 2014, Anthony DeYurre, counsel for D & E, contacted Neal Litman, Dr. Vitto's real estate attorney, to notify him of the title

3

defect and to inform Dr. Vitto that D & E was attempting to cure the title defect. On April 1, 2014, Litman emailed DeYurre to inquire whether D & E wished to extend the closing date under the contract. DeYurre forwarded the email to David Cooper and Ramos and asked if they wanted to "extend the closing date" or wait and "see if the buyer [would] walk away?" Ramos immediately responded that they should extend the closing date, and David Cooper agreed. Notwithstanding David Cooper's and Ramos' express intent to extend the closing date, the record does not reflect that DeYurre ever responded to Litman's email.

On April 4, 2014, due to the ongoing bankruptcy proceedings, the bank moved to cancel the foreclosure sale of units 2601 and 2603, which had been rescheduled to April 9, 2014 based on D & E's contract with Dr. Vitto. On May 5, 2014, DeYurre, D & E's counsel, filed a notice of bankruptcy with the trial court to stay the foreclosure sale of the two units. Meanwhile, the motion to dismiss the bankruptcy proceedings in the Southern District of New York was heard on May 28, 2014. Although the motion was denied, the bankruptcy court advised counsel that if the parties identified any assets which they believed they had a right to take possession of, the parties could move for a stay and the bankruptcy court would grant stay relief as to those properties. Despite the bankruptcy court's assurances that it would essentially remove the subject units from the bankruptcy proceedings upon a motion identifying the property which D & E believed it had a right to take

4

possession of, D & E never filed any motion identifying units 2601 and 2603 as its property, nor did D & E attempt to demonstrate Imperial's transfer of these units to D & E in 2011.

A few days later, on June 3, 2014, Litman emailed DeYurre asking for an update. In this communication, Litman told DeYurre that although it was clear that D & E had not been making a diligent effort to clear the title defect, "in an abundance of caution," Dr. Vitto was giving D & E notice that he was electing to extend the cure period to 120 days as provided by the contract. There is no record evidence that DeYurre responded to this email.

Litman again emailed DeYurre on June 13, 2014, attaching an updated title commitment and again inquiring as to whether there had been any progress on the title issues. On this same day, Litman contacted Michael Venditto, D & E's bankruptcy counsel, regarding the updated title commitment and inquiring as to what needed to be done to obtain relief. On June 18, 2014, Venditto told Litman that Imperial and Mel Cooper "definitely would consider allowing the sales to proceed" but they needed certain documents, including the contract, in order to do so. Litman forwarded Venditto's email to DeYurre.

On July 9, 2014, Litman sent Venditto a copy of the contract. On September 29, 2014, Litman wrote to Venditto asking for an update. The record reflects that Venditto forwarded this correspondence to David Cooper, Ramos, and

DeYurre, and in this communication Venditto expressed uncertainty as to whether the contract was still enforceable. DeYurre responded by informing Venditto that he intended to send a notice to Dr. Vitto cancelling the contract. However, DeYurre did not send cancellation notices to Litman or Dr. Vitto, and on January 4, 2015, Litman again emailed DeYurre questioning DeYurre regarding his unreturned phone calls and requesting that DeYurre call him. DeYurre did not respond. Thereafter, Dr. Vitto demanded that D & E fulfill its obligations under the contract. D & E responded that the contract had terminated.

The three-count complaint sought specific performance against D & E (Count I), injunctive relief to prohibit D & E from transferring the properties prior to the resolution of the action (Count II), and money damages from David Cooper and Ramos for fraudulent misrepresentation (Count III). Following a five-day trial, the trial court entered its findings of fact and conclusions of law, finding among other things, that Dr. Vitto was entitled to specific performance of the contract. This appeal followed.

## THE TRIAL COURT'S ORDER

In the final judgment, the trial court made the following findings. The properties are unique. Dr. Vitto was ready, willing, and able to close absent the title defect. Dr. Vitto did not obtain an extension of the March 31, 2014 closing date due to D & E's claim that they could not close. A party cannot insist on

6

performance of a condition precedent that it has, itself, frustrated or prevented, and a buyer is not required to tender the purchase price if title is not marketable.

The trial court further found that any question as to the timeliness of the updated loan commitment was waived because D & E failed to raise this issue. The trial court also emphasized that it is usually the buyer that discovers a defect and notifies the seller. Here, it was D &E that notified Dr. Vitto of the bankruptcy case and its intention to cure the defect. Thus, Dr. Vitto had no obligation to notify D & E within five days of receiving the title commitment regarding the defect to title, as required under the contract. Lastly, the trial court found that it was DeYurre's March 6, 2014 notice to Litman of the bankruptcy proceeding that commenced the thirty-day cure period; D & E's actions were wholly inconsistent with its position that the contract was terminated; and Dr. Vitto relied on D & E's actions to his detriment.

D & E's actions included: (1) DeYurre's email to defendants David Cooper and Ramos in April 2014 asking whether they wanted to extend the closing date (neither Dr. Vitto, nor his counsel, were copied on this email); (2) the email from Litman to Venditto and Venditto's response, which indicated that the bankruptcy trustees would consider allowing the sale to proceed; (3) D & E's continued efforts to resolve the title defect in the bankruptcy proceeding; and (4) D & E's failure to return Dr. Vitto's deposit.

7

For these reasons, the trial court concluded that D & E, David Cooper, and Ramos failed to exercise reasonable diligent efforts in good faith to provide Dr. Vitto with marketable title, and therefore, entered judgment in Dr. Vitto's favor for his specific performance claim.

## STANDARDS OF REVIEW

A trial court's findings of fact shall not be disturbed unless they are clearly erroneous. See Emaminejad v. Ocwen Loan Servicing, LLC, 156 So. 3d 534, 535 (Fla. 3d DCA 2015). A trial court's legal conclusions, however, are subject to *de novo* review. Verneret v. Foreclosure Advisors, LLC, 45 So. 3d 889, 891 (Fla. 3d DCA 2010). The interpretation of a contract is a question of law which is also subject to *de novo* review. Kissman v. Panizzi, 891 So. 2d 1147, 1149 (Fla. 4th DCA 2005). For present purposes, we must consider whether D & E exercised reasonable diligence to clear title, and "[w]hat constitutes reasonable diligence is nearly always a mixed question of law and fact." Blackmon v. Hill, 427 So. 2d 228, 230 (Fla. 3d DCA 1983).

## ANALYSIS

### I. Did the Contract Expire by its Own Terms?

D & E contends that the trial court erred by determining that D & E was estopped from relying on the contract's language to argue that the contract expired by its own terms. For the reasons that follow, we disagree.

8

## A. <u>Marketable Title</u>

D & E argues that the contract expired by its own terms because D & E could not provide marketable title and Dr. Vitto did not timely avail himself of the provision in the contract that allowed him to extend the closing date. D & E further contends that under the contract, the failure to deliver marketable title does not constitute a breach if D & E undertook a "reasonable diligent effort" to provide marketable title prior to the date of the closing. In support of its position, D & E cites to paragraph 15(b) of the contract, which states, in relevant part as follows:

> **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

Nothing in this paragraph suggests that failure to deliver marketable title is excepted from constituting a breach. Instead, the contract merely provides that if the seller defaults, and the default is for a reason other than failing to deliver marketable title after the seller has made a reasonable diligent effort to cure the title defect, the buyer *may* elect a refund of his/her deposit without waiving a claim for specific performance or damages. Thus, failure to deliver marketable title may still constitute a breach of the contract, and if the seller fails to make a reasonable diligent effort to cure the defect, the buyer may seek specific performance.

9

**B. Cure Period**

The trial court correctly found, and the record supports, that the 30-day cure period commenced on March 6, 2014 and ended on April 7, 2014. The bankruptcy case rendered the title unmarketable, and DeYurre's March 6, 2014 notice to Litman commenced the 30-day cure period, thus, relieving Dr. Vitto from the March 30, 2014 closing date unless the title defect was cleared by March 30, 2014. Because D & E failed to clear the title defect, Dr. Vitto clearly had no obligation to close on March 30, 2014. See, e.g., Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So. 2d 1053, 1055 (Fla. 4th DCA 1983) (finding that a defendant must have complied with, or offered to comply with, all of the terms of the contract in order to properly raise delay as a defense to specific performance).

> Paragraph 18(A)(ii) of the contract provides, in part, as follows:
>
> If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date . . . ; or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

The record reflects that the parties were working together to clear the title defect well after the closing date had passed. However, on June 3, 2014, when D & E failed to clear the title defect and Dr. Vitto concluded that D & E was not making a reasonable diligent effort to do so, Dr. Vitto sent a notice, through counsel, extending the cure date for 120 days. DeYurre never objected or responded to this notice.

The trial court concluded that the contract did not automatically terminate on April 7, 2014, when Litman failed to extend the cure period because D & E: (1) did not, either by providing notice to Dr. Vitto or by its actions, terminate the contract; (2) had not used reasonable diligent efforts to cure the defect; and (3) D & E could not use its own failure to cure the title defect as grounds for relieving it of its obligations under the contract. Further, it is clear that Dr. Vitto believed that the cure period had been extended and was relying on D & E's representations that it was trying to cure the title defect. In sum, the extension of the cure period was for the benefit of D & E to provide D & E with more time to cure the defect. Because D & E failed to cure the title defect despite being given ample time to do so, the trial court properly granted Dr. Vitto's claim for specific performance.

## C. **Estoppel**

D & E also argues that reversal is warranted because Dr. Vitto failed to prove that he justifiably relied on D & E's silence or omissions, and that this

11

reliance was intended or reasonably anticipated by D & E. We disagree.

The primary purpose of the doctrine of equitable estoppel is to prevent a party from profiting from his or her own wrongdoing. Major League Baseball v. Morsani, 790 So. 2d 1071, 1078 (Fla. 2001). A party's own wrongful act cannot serve as the basis for a claim of equitable estoppel against another party. Barnett & Klein Corp. v. President of Palm Beach–A Condo., Inc., 426 So. 2d 1074, 1075 (Fla. 4th DCA 1983). Here, D & E ignores the fact that the express terms of the contract required that the running of the cure period and the extended cure period be predicated on the seller's efforts to clear title. The trial court found, and the record supports, that D & E failed to make a reasonable diligent effort to cure the title defect, and thus, the trial court correctly concluded that D & E was precluded from claiming that its own failure to clear title was grounds for relieving it from its obligations under the contract.

In its findings of fact and conclusions of law, the trial court relied on Kubicek v. Way, 102 So. 2d 173 (Fla. 2d DCA 1958). In Kubicek, a vendor contracted to sell 600 acres of land that he did not yet own. With the knowledge that he did not yet own the land, and unsure of whether he would be able to acquire all of the land within the requisite time period, the vendor included an "out" clause that rendered the contract void if the vendor could not convey the full 600 acres. Id. at 174. The vendor was ultimately unable to acquire the total acreage, so he

sought to cancel the contract. The vendee sued for specific performance as to the acreage that the vendor did actually own. Id. at 173. The Second District Court of Appeal concluded that because the clause in the contract regarding title defects was put in place for the benefit of the buyer, the seller could not rely on the avoidance clause to claim that the contract was terminated due to his own inability to render the title marketable. Id. at 173-75. We agree with the trial court's application of the holding in Kubicek and its finding that D & E was precluded from using its own failure to cure the defect to establish that Dr. Vitto was not entitled to specific performance.

We also note that D & E has taken materially inconsistent positions as to when the contract allegedly terminated. At trial, D & E argued that the contract terminated on March 31, 2014. However, D & E's actions during 2014-2015 are inconsistent with its position that the contract had terminated in March 2014.

For instance, when Litman emailed D & E's attorney, DeYurre, on April 1, 2014, inquiring as to whether D & E wished to extend the closing date, DeYurre did not respond that the contract had terminated and thus, no extension was necessary. Instead, DeYurre contacted D & E and asked D & E whether D & E wished to extend the closing date or whether it wanted to wait and see if Dr. Vitto would walk away. As noted by the trial court, if D & E was under the impression that the contract had already terminated on March 31, then there would not have

13

been a contract from which Dr. Vitto could walk away. Similarly, with respect to the June 3, 2014 email from Litman to D & E wherein Litman invoked the cure period on behalf of Dr. Vitto, DeYurre did not respond that the contract had already terminated. Further, after speaking to Venditto, the bankruptcy attorney, Litman sent the updated title commitments to both Venditto and DeYurre. Nothing in the record suggests that either one responded by questioning why Litman was forwarding these documents as the contract had terminated. In fact, on June 18, Venditto responded by informing Litman that the trustees in the bankruptcy proceedings were considering whether to allow the sales of the units to proceed. Lastly, when Litman wrote to Venditto on September 29, 2014 requesting an update on the status, Venditto forwarded the email to DeYurre to respond. In response, DeYurre did not take the position that the contract had already terminated or that the contract was unenforceable. Instead, he sent an email to D & E stating that he would prepare cancellation notices. Logically, as noted by the trial court, there would be no need to cancel the contract if the contract had already terminated.

Lastly, we note that D & E and Dr. Vitto, through their respective counsels, engaged in multiple discussions as to the efforts being made in order to clear title. During these discussions, D & E conducted itself as though the contract was in full force and effect, and as if it fully intended to close on the sale of the properties.

Thus, the record supports the trial court's finding that Dr. Vitto relied on D & E's actions to his detriment by, among other things, not moving forward with the purchase of another property, as well as incurring both the time and expense of pursuing his rights under the contract for several years.

## I. **Reasonable Diligent Efforts**

D & E contends that the trial court erred by finding that D & E failed to use reasonable diligent efforts to clear title. Specifically, D & E claims that it was not required to undertake "extraordinary efforts or expenditures" in order to clear title. These arguments likewise fail to persuade.

The trial court's findings were based, in part, on D & E's actions vis-à-vis the bankruptcy proceedings. The record supports the trial court's conclusion that D & E "did not in any way exercise good faith, or reasonably diligent efforts to provide Dr. Vitto with marketable title" and that "[D & E] did not use diligence in pursuing reasonable efforts to clear title attendant to the [bankruptcy case]." We agree with the trial court that merely filing a motion to dismiss does not constitute reasonable diligent efforts to clear title, especially in light of the bankruptcy court's suggestion that it would have entered a stay if asked to do so.

The trial court's findings are also supported by the holding in Galt View Apartments, Inc. v. Fazio, 490 So. 2d 1005 (Fla. 4th DCA 1986). At issue in Galt View was the purchase of a co-op apartment building. There, the buyer brought an

15

action for specific performance, and the trial court found that the seller failed to make a diligent good faith effort to satisfy a condition precedent contained in the contract. Id. at 1006. The contract required the seller to obtain, among other things, an approval from the Department of Housing and Urban Development ("HUD"). The seller submitted an application to HUD, however, it was rejected. Id. The seller claimed that the filing of the application was sufficient to comply with its obligations. However, evidence produced at trial demonstrated that the seller had declined several options for obtaining the approval. Id. at 1008.

Similarly, in the instant case, although D & E filed a motion to dismiss the bankruptcy case, D & E did not even mention the properties, nor did it request expedited consideration of its motion to dismiss. D & E also completely ignored the bankruptcy judge's invitation to identify any assets it believed it had a right to possess and to move for a stay, which the bankruptcy judge advised D & E it would grant. A stay could have resulted in a removal of the properties from the bankruptcy proceeding and would have permitted the sale of units 2601 and 2603 to Dr. Vitto to proceed. As noted by the trial court: "A party seeking to utilize reasonable and diligent efforts to cure the title defect would have done what the bankruptcy court suggested and sought stay relief, or [other] types of relief. . . . It was unreasonable in this case for the Defendants to have failed to do so."

16

Here, D & E's actions call its intentions into question. The record reflects that D & E admitted that it entered into the contract with Dr. Vitto in order to avoid the pending foreclosure sale of unit 2601, and that D & E used the contract to delay the foreclosure sale for months. Once the bankruptcy proceedings were initiated, the foreclosure cases were stayed, and thus, D & E and the defendants no longer needed their contract with Dr. Vitto, the pending sales of the units, and Dr. Vitto's $170,000 deposit to prevent the foreclosure sale from occurring. In the interim, the defendants were offered more money for the subject properties than the sale price to Dr. Vitto. In fact, they admitted that the value of the units had gone up since the execution of the contract. This may explain DeYurre's non-responsiveness and suggestion that they "wait and see" if Dr. Vitto would simply walk away from the contract, and fully supports the trial court's conclusion that D & E failed to exercise reasonable diligent efforts to provide Dr. Vitto with marketable title.

## III. Release of D & E's Obligations Under the Contract

Lastly, D & E contends that the trial court erred by concluding that D & E had not been released from its obligations under the contract because the deposit was never returned to Dr. Vitto. Section 18(A)(ii) of the contract provides, in part, as follows: "If after a reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and

17

Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract."

Because the trial court found that D & E failed to make a reasonable diligent effort, the contract did not terminate, D & E was not released from its obligations under the contract, and Dr. Vitto was free to seek specific performance, rather than a return of his deposit. Section 18(A)(ii) predicates any release on a refund of the deposit to Dr. Vitto, and the record reflects that Dr. Vitto never sought nor received a return of his deposit. Thus, the trial court properly concluded that D & E continued to be bound by the contract.

## CONCLUSION

We conclude that: (1) the contract did not expire by its own terms and that D & E was properly estopped from making such a claim; (2) D & E failed to use reasonable diligent efforts to deliver marketable title before the extended closing date or prior to the expiration of the contract; and (3) D & E failed to comply with the contract's requirements for a release of its obligations. Accordingly, we affirm the trial court's order granting Dr. Vitto's claim for specific performance.

Affirmed.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**