980 So.2d 580 (2008)
BERMONT LAKES, LLC, a Florida limited liability company, Appellant,
v.
J. Michael ROONEY and Steven V. Hall, Co-Trustees of the M. Lewis Hall Protective Testamentary Trust for William Lewshane Hall, Beneficiary, Appellees.
No. 2D07-3138.
District Court of Appeal of Florida, Second District.
April 30, 2008.
*582 Warren R. Ross and Lance Ball of Wotitzky, Wotitzky, Ross & Tuttle, P.A., Punta Gorda, for Appellant.
Harold N. Hume and J. Matthew Belcastro of Henderson, Franklin, Starnes & Holt, Fort Myers, for Appellees.
VILLANTI, Judge.
In a two-count complaint, Bermont Lakes, LLC, sought specific performance *583 of a contract for the sale and purchase of vacant land and damages for the breach of that contract from J. Michael Rooney and Steven V. Hall, as co-trustees of the M. Lewis Hall Protective Testamentary Trust for William Lewshane Hall (the Trust). The trial court entered partial summary judgment in favor of the Trust on the specific performance count. For the reasons explained below, we treat Bermont Lakes' appeal as a petition for writ of certiorari, grant the writ, quash the partial final summary judgment, and remand for further proceedings.

Background Facts
The record shows that in January 2005 Bermont Lakes contracted to purchase 160 acres of vacant land from the Trust. Closing was originally set for March 27, 2005; however, the parties later agreed to postpone closing until April 18. On April 15, two of the principals of Bermont Lakes signed the closing documents. On April 18, when the third Bermont Lakes principal appeared at the transaction broker's office to sign the closing documents, he was told that closing could not occur that day because there were "signature problems on the deed" that the Trust needed to resolve. Bermont Lakes was told that the Trust was actively taking steps to obtain the required signature and that closing would occur as soon as the signature was obtained. At that point, no one from Bermont Lakes was told exactly what the "signature problems" were.
Also on April 18, Bermont Lakes was provided with a commitment for title insurance issued on the 160 acres that were the subject of the parties' contract. Schedule A of this title insurance commitment indicated that the Trust was the fee simple owner of all 160 acres. However, Schedule B indicated that the Trust would need a deed from one Leeshawn Norris conveying her interest in 40 of the 160 acres before it could convey clear title to the full 160 acres. Nothing in the commitment for title insurance explained the apparent discrepancy in the ownership interests listed on Schedules A and B or explained what interest Ms. Norris allegedly had in the 40-acre parcel. In addition, nothing in the record shows that anyone from Bermont Lakes received a copy of the commitment for title insurance before the scheduled closing date of April 18.
During the next few weeks, a representative of the Trust repeatedly told the transaction broker that he was working to obtain the signature needed to close on the transaction with Bermont Lakes. He also told the transaction broker that he represented Ms. Norris, that he did not believe that she had any actual legal interest in the 40-acre parcel identified in the commitment for title insurance, and that, if he had to, he would pay Ms. Norris $10,000 to obtain clear title to the 40-acre parcel. Based on these conversations, the transaction broker assured Bermont Lakes that the Trust would close on the transaction in the near future.
At some point in mid-May, Bermont Lakes learned that the delay was not caused by "signature problems" but instead was caused by the fact that the Trust did not actually own 40 of the acres included in the contract and that it needed the deed from Ms. Norris to obtain clear title to that 40-acre parcel. At that point, Bermont Lakes offered to do whatever it could to assist the Trust in obtaining clear title to the 40-acre parcel. In addition, Bermont Lakes offered to restructure the contract to purchase the original 120 acres plus a different contiguous 40-acre parcel. However, Bermont Lakes continued to seek the right to purchase the original 40-acre parcel once clear title was obtained. In response, the Trust continued to assure the transaction broker, and through him *584 Bermont Lakes, that it was still working to close on the original contract.
At approximately the same time, the transaction broker learned from the Trust that Ms. Norris was demanding $400,000 for her interest in the 40-acre parcel. The transaction broker suggested to the Trust that the parties could still close on the transaction by restructuring the contract to include a different 40-acre parcel. A representative of the Trust told the transaction broker that he would convey this suggestion to the other trustees and get back with him.
When no further steps toward closing had occurred by June 2, the transaction broker sent both parties a letter indicating that because the transaction had not closed, he recommended that they each seek legal counsel. Subsequently, on June 13, Bermont Lakes sent a letter to the transaction broker asserting that it had a valid contract with the Trust for the 160 acres and that it was still willing to assist with whatever was needed to resolve the issue of the 40-acre parcel, including purchasing a different 40-acre parcel if that was necessary. However, Bermont Lakes continued to assert that it intended to close on the original contract if possible. Only after receiving this letter through the transaction broker did the Trust indicate, for the first time, that it would not close on the transaction.
Bermont Lakes subsequently sued the Trust in a two-count complaint. Count one sought specific performance on the contract. Count two sought an award of damages. Upon filing suit, Bermont Lakes also recorded a lis pendens against the contracted-for 160 acres. The Trust subsequently moved for summary judgment on only the specific performance count. At the hearing on the Trust's motion, the Trust argued that after it determined that it did not have clear title to the 40-acre parcel, it attempted to obtain clear title through negotiation with Ms. Norris. When negotiations failed, Ms. Norris sued the Trust in a declaratory judgment action, and the Trust settled that action by exchanging deeds with Ms. Norris. Through this exchange of deeds, Ms. Norris ended up as the "fee simple owner" of 20 acres of the 40-acre parcel.[1] Ms. Norris then sold her 20 acres to her attorney for $300,000. The Trust argued that because the contract price for the entire 160 acres was $960,000, the purchase of these 20 acres would have cost the Trust approximately 32% of the contract price. The Trust argued that it was not required to make this type of extraordinary expenditure in order to remedy a title defect and that because it could not convey clear title after a diligent effort, it should be relieved of its obligations under the contract.
In opposition to the motion, Bermont Lakes argued that there were disputed issues of material fact as to whether the Trust had made a good faith effort to obtain clear title to the 40-acre parcel and that, in any event, the Trust was obligated to convey the 120 acres to which it did have clear title. At the close of the hearing, the trial court entered a partial final summary judgment in favor of the Trust on the specific performance count. This partial final judgment also fully discharged the lis pendens. The damages count remains pending in the trial court. Bermont Lakes has appealed the partial final summary judgment to this court.

*585 Jurisdictional Issue
We must first address the issue of whether this court has jurisdiction to entertain this appeal. Florida Rule of Appellate Procedure 9.110(k) permits appellate review of partial final judgments. However, an appeal of a partial final judgment relating to a single count of a multicount complaint may be taken only if that count constitutes a separate and distinct cause of action that is not interdependent with other pleaded claims. Mendez v. W. Flagler Family Ass'n, 303 So.2d 1, 5 (Fla. 1974); Fla. Lifestyles Realty, Inc. v. Goodwin, 917 So.2d 1060, 1061 (Fla. 2d DCA 2006). In determining whether a partial final summary judgment is final and appealable, this court considers three issues:
1. Could the causes of action disposed of in the dismissed count be maintained independently of each other?
2. Were one or more parties removed from the action when the partial summary judgment was entered?
3. Are the counts separately disposed of based on the same or different facts?
Fla. Lifestyles Realty, Inc., 917 So.2d at 1062 (citing Szewczyk v. Bayshore Props., 456 So.2d 1294, 1296 (Fla. 2d DCA 1984)). Here, the partial final judgment did not remove a party from the action, and resolution of both the specific performance counts and the damages count will be determined based on essentially the same underlying facts concerning the making of the contract and the events surrounding the failed closing. Accordingly, we conclude that we have no jurisdiction to review the partial final summary judgment as a final, appealable order because interrelated claims remain pending.
However, rule 9.040(c) provides that if a party seeks an improper remedy, this court shall treat the case as if the proper remedy had been sought. Thus, for example, in Norris v. Paps, 615 So.2d 735, 736 (Fla. 2d DCA 1993), this court treated an appeal from a final judgment of foreclosure as a petition for writ of certiorari when the final judgment of foreclosure was sufficiently final to permit the foreclosure sale to go forward even though an interrelated counterclaim for damages remained pending in the trial court. In light of these authorities, we have considered whether we can review the partial final summary judgment by some other means.
We note that this court and others have held that an order discharging a lis pendens may be reviewed by certiorari. See, e.g., Loidl v. I & E Group, Inc., 927 So.2d 1016, 1017 (Fla. 2d DCA 2006); Eurohome DI Soleil, LLC v. Oaks Group, Inc., 912 So.2d 1271, 1272 (Fla. 4th DCA 2005); Baghaffar v. Story, 515 So.2d 1373, 1373 (Fla. 5th DCA 1987); Hough v. Bailey, 421 So.2d 708, 708 (Fla. 1st DCA 1982). However, each of these cases involved orders solely discharging a lis pendens. Thus, the courts did not address the question of whether having certiorari jurisdiction over one portion of the order would operate to give this court jurisdiction to review other portions of the same order.
However, in Atkins v. Rybovich Boat Works, Inc., 561 So.2d 594, 595 (Fla. 4th DCA 1990), quashed on other grounds, 585 So.2d 270 (Fla.1991), the Fourth District found that it had certiorari jurisdiction to review a partial final summary judgment that denied a claim by a buyer for specific performance of a real estate contract and quieted title to the subject property in the sellers. The court found that it had certiorari jurisdiction to review the partial final summary judgment because that judgment allowed the real property at issue to "be freely disposed of prior to plenary review, thus evading an adequate remedy on appeal" for the buyer. Id.
*586 In this case, as in Atkins, the partial final summary judgment that denies Bermont Lakes' specific performance and discharges the lis pendens results in a situation in which the contracted-for 160 acres can be freely disposed of prior to plenary review, thus potentially leaving Bermont Lakes with no adequate remedy on appeal. While Bermont Lakes' damages count remains pending, money damages are considered an inadequate remedy at law to a purchaser of land because all land is considered unique. Henry v. Ecker, 415 So.2d 137, 140 (Fla. 5th DCA 1982). Accordingly, we find that the jurisdictional requirements for certiorari have been met, and we treat the notice of appeal by Bermont Lakes as a petition for writ of certiorari.

Merits
The contours of this court's review of a petition for writ of certiorari are well defined. To obtain a common-law writ of certiorari, the petitioner must establish that (1) the trial court departed from the essential requirements of the law, (2) the departure resulted in a material injury that will affect the remainder of the proceedings below, and (3) the injury cannot be corrected through any other means. Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995); Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). The first element is directed to the merits of the petition, while the second and third elements constitute a jurisdictional test. Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995). Having determined above that this court has certiorari jurisdiction to review the partial final summary judgment, all that remains for us to address is whether the trial court departed from the essential requirements of the law in granting summary judgment in favor of the Trust on the specific performance count.
[T]he departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) (citing Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000), and Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 528 (Fla.1995)). According to Kaklamanos, "clearly established law" can arise from controlling case law that deals with the same issue of law. 843 So.2d at 890.
Here, there is no question that the standard for determining whether summary judgment may be properly granted is clearly established. "A movant is entitled to summary judgment `if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Estate of Githens ex rel. Seaman v. Bon Secours-Maria Manor Nursing Care Ctr., Inc., 928 So.2d 1272, 1274 (Fla. 2d DCA 2006) (quoting Fla. R. Civ. P. 1.510(c)). The moving party bears the burden of proving the nonexistence of issues of material fact, and every possible inference must be viewed in favor of the party opposing summary judgment. Id. Indeed, even the slightest possibility of the existence of a genuine issue of material fact precludes the entry of final summary judgment. Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138, 1140 (Fla. 2d DCA 2000).
*587 In this case, the trial court departed from the essential requirements of the law in granting summary judgment in favor of the Trust for two reasons. First, genuine issues of material fact exist concerning whether the Trust exercised reasonable diligence to obtain clear title to the 40-acre parcel. As the Trust correctly points out, when a seller seeks to avoid a contract for the sale of real property based on the existence of title defects, the buyer is not entitled to specific performance of the contract unless the buyer shows that the seller failed to exercise reasonable diligence in clearing those title defects. Castigliano v. O'Connor, 911 So.2d 145, 148 (Fla. 3d DCA 2005). "Reasonable diligence only requires the seller to act in good faith and appropriately in view of the circumstances; it does not require the seller to make extraordinary efforts or expenditures." Id.; see also Blackmon v. Hill, 427 So.2d 228, 230 (Fla. 3d DCA 1983). However, "[w]hat constitutes reasonable diligence is nearly always a mixed question of law and fact, difficult of definition, and in every instance pivoting on the facts of the particular case." Blackmon, 427 So.2d at 230; see also Castigliano, 911 So.2d at 148-49.
Here, the record shows that to clear the title to the 40-acre parcel, the Trust deeded the parcel to Ms. Norris and her brother, and the two of them subsequently exchanged deeds. In this way, Ms. Norris ended up with title to 20 of the 40 acres simply by the exchange of deeds for no compensation. Ms. Norris then sold her 20 acres to her attorney without an appraisal or other due diligence. The exchange of deeds for no compensation and the later sale of the 20 acres in what does not appear to be an arm's length transaction raise genuine issues of material fact as to whether the Trust exercised reasonable diligence in its efforts to obtain clear title to the 40-acre parcel.
In this appeal, the Trust contends for the first time that summary judgment was proper because Bermont Lakes did not provide written notice of the alleged title defect as required by paragraph eight of the contract. In addition, the Trust contends that Bermont Lakes waited too long to exercise its rights under paragraph eight to take the property "as is" despite the title defects. While we do not believe that this argument is properly before this court, even if it were, we would nevertheless find that the trial court departed from the essential requirements of the law in granting the summary judgment because genuine issues of material fact exist concerning whether the Trust itself breached paragraph eight of the contract by failing to provide the commitment for title insurance at least ten days before the scheduled closing date. In addition, genuine issues of material fact exist concerning whether the Trust's repeated assurances after April 18 that it was working to resolve the "signature problems" resulted in a waiver of the notice provision of paragraph eight. Thus, the partial final summary judgment is improper even on this alternative basis.
Second, even if there were no genuine issues of material fact, the trial court still departed from the essential requirements of the law because the Trust was not entitled to summary judgment on the specific performance count as a matter of law. When a seller contracts to sell land and thereafter discovers that he does not own a portion of the land to be sold, the buyer may nevertheless seek specific performance of that portion of the land the seller does own. Kubicek v. Way, 102 So.2d 173, 174 (Fla. 2d DCA 1958). The reason for this rule is essentially equity and fairness:
"The contract is an absolute undertaking by [the vendor] to sell and by [the purchaser] *588 to purchase said lots upon the terms stated; [the vendor], on his part, to convey a good title. True, a provision is added that, in case the title, upon examination, should be found materially defective, then, unless such defects should be cured within 60 days after written notice thereof, the earnest money should be refunded, and the contract should become inoperative. This clearly was a provision inserted for the sole benefit of the purchaser, and one of which he alone could take advantage. It provided for the consequences of a failure of performance by the vendor, and, in the nature of things, could have been intended only to confer upon the purchaser the right to treat the contract as inoperative. It would be absurd to suppose that the parties intended to make a breach by the vendor of his own undertaking a ground upon which he would have a right to declare the contract void. Such construction would, in effect, make the performance of the contract a matter dependent upon the mere will or caprice of the vendor, as it would always be within his power, if he should see fit to do so, to tender to the purchaser an imperfect title, and thus avail himself of his option to rescind."
Id. at 175 (quoting Hunt v. Smith, 139 Ill. 296, 28 N.E. 809, 811 (1891)) (emphasis added). The Fourth District agreed with this court's reasoning in a similar case, noting that when a seller cannot convey all of the land that he contracted to sell, the buyer is nevertheless entitled to specific performance of the land the seller can convey because "sellers should not be heard to deny their contract and to escape performance by reason of their own deficiency and inability to perform as they promised." Black v. Clifton, 284 So.2d 465, 466 (Fla. 4th DCA 1973).
Under the reasoning of Kubicek and Black, the Trust was not entitled to avoid the entire contract with Bermont Lakes as a matter of law simply because it could not convey all of the acreage contemplated by the contract. Instead, depending on the resolution of the factual issues in the record, the Trust may be obligated to convey to Bermont Lakes the 120 acres it clearly owns.
For both of these reasons, it is apparent that the trial court departed from the essential requirements of the law when it entered the partial final summary judgment in favor of the Trust and discharged the lis pendens. The totality of the facts in the record convinces us that this departure constitutes a miscarriage of justice in this case.
Petition granted, partial final summary judgment quashed, and remanded for further proceedings.
ALTENBERND and CANADY, JJ., Concur.
NOTES
[1] From our record, it does not appear that Bermont Lakes was a party to this declaratory judgment action. Further, it appears that the exchange of deeds occurred with full knowledge of the lis pendens recorded by Bermont Lakes. Nothing in our record indicates that Bermont Lakes ever released its lis pendens as to these 20 acres.