NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


FARREY'S WHOLESALE HARDWARE
CO., INC.,

      Petitioner,

v.

COLTIN ELECTRICAL SERVICES,
LLC; VCC, LLC; and TAMPA PREMIUM
OUTLETS, LLC,

      Respondents.

Case No. 2D17-2172


FARREY'S WHOLESALE HARDWARE
CO., INC., a Florida corporation,

      Appellant,

v.

COLTIN ELECTRICAL SERVICES,
LLC, a Florida limited liability company;
VCC, LLC, a foreign limited liability
company; and TAMPA PREMIUM
OUTLETS, LLC, a foreign limited
liability company,

      Appellees.

Case No. 2D17-2553


FARREY'S WHOLESALE HARDWARE
CO., INC.,

      Appellant,

v.

Case No. 2D17-3191
<u>CONSOLIDATED</u>

COLTIN ELECTRICAL SERVICES,        )
LLC; VCC, LLC; and TAMPA PREMIUM   )
OUTLETS, LLC,                      )
                                   )
        Appellees.                 )
_____)

Opinion filed December 28, 2018.

Appeals from the Circuit Court for Pasco County and Petition for Writ of Certiorari to the Circuit Court for Pasco County; Linda H. Babb, Judge.

Michael E. Stearns, Douglas J. Roberts, and Mark D. Nichols of Stearns, Roberts & Guttentag, LLC, Deerfield Beach, for Appellant/Petitioner.

Duane A. Daiker of Shumaker, Loop & Kendrick, LLP, Tampa, and Brian R. Lambert of Cotney Construction Law, LLP, Tampa, for Appellee/Respondent Coltin Electrical Services, LLC.

Phillip N. Hammersley and Erik M. Hanson of Norton, Hammersley, Lopez & Skokos, P.A., Sarasota, for Appellee/Respondent Tampa Premium Outlets.

No appearance for Appellee/Respondent VCC, LLC.

KHOUZAM, Judge.

In three different proceedings, Farrey's Wholesale Hardware Co., Inc. (Farrey's), seeks appellate review of an adverse partial summary judgment entered in favor of Coltin Electrical Services, LLC (Coltin), and a few other related orders entered after the entry of the partial summary judgment. The first proceeding is a petition for writ of certiorari (case 2D17-2172), and the second (case 2D17-2553) is a direct appeal

pursuant to Florida Rule of Appellate Procedure 9.110(k). Both of these proceedings challenge the entry of partial summary judgment, as well as an order denying Farrey's motion for leave to file a second amended complaint. In its third proceeding (case 2D17-3191), which we are treating as a petition for writ of certiorari, Farrey's seeks review of the trial court's order granting Coltin's motion to release a lien transfer bond and an order denying leave to add the surety of the bond as an indispensable party. These three proceedings travelled together and were heard by the same panel. On our own motion, because all three proceedings are derived from the same case below and contain the same set of essential facts and issues, we consolidated all three proceedings, treating them as if they were initiated together as a single case.

Because the trial court departed from the essential requirements of law in (1) violating a clearly established principle of law to exclude evidence that created a genuine issue of material fact and (2) finding that Farrey's claim of lien was fraudulent and unenforceable as a matter of law and fact, we grant the petition for writ of certiorari and quash the order entering partial summary judgment and the order granting Coltin's motion to release the lien transfer bond. In light of this ruling, we dismiss the proceeding to the extent Farrey's challenges the orders denying both its motion for leave to file a second amended complaint and its motion to add the surety of the lien transfer bond as an indispensable party to the proceedings.

## Factual Background and Procedural History

This matter arose from the construction of a new mall, the Tampa Premium Outlets Mall in Pasco County, Florida (the Project).[1]  The property owner, Tampa Premium Outlets, LLC (Owner), entered into a contract with the general contractor, VCC, LLC (VCC).  VCC entered into a subcontract with Coltin, the electrical subcontractor, to provide and install light fixtures for the project.  Coltin, in turn, sought pricing for certain light fixtures and materials from various electrical suppliers.  On February 4, 2015, Farrey's, an electrical supplier, provided a quote to Coltin, in which it offered to provide various materials for the Project.  In its February quote, Farrey's listed the unit price, quantity, type, and a short description for each of its electrical components, including the item's manufacturer.  Upon receiving Farrey's pricing, Coltin accepted the quote and issued its initial purchase order for many of the listed items, which Farrey's began delivering to the jobsite.

Throughout the course of the Project, Coltin issued a total of nine change orders or revisions to the initial purchase order, ultimately increasing the total cost of their agreement.  Coltin's multiple purchase orders made both quantitative and qualitative alterations to the initial purchase order.  Some of the qualitative changes were allegedly made due to Coltin requesting electrical components from different manufacturers that were not originally priced in the February quote.  As a result, Farrey's provided a revised quote to Coltin listing those different materials and other

---

[1]The facts stated in this opinion are drawn from the pleadings, affidavits, and other documents in the record.  We examine these facts in the light most favorable to Farrey's as the party against whom the partial summary judgment was entered.  See Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002); Bermont Lakes, LLC v. Rooney, 980 So. 2d 580, 586 (Fla. 2d DCA 2008).

components on June 5, 2015. The pricing provided in the June quote was then apparently accepted and used in Coltin's subsequent purchase orders, including the last purchase order (the ninth-revised purchase order).[2] These alterations, coupled with the purportedly late arrivals of fixtures that were supposedly both unassembled and lacking the requisite marking to pass the building code inspection, became the focus of the underlying dispute regarding the amount owed to Farrey's. When Coltin purportedly refused to pay Farrey's for the different materials it had supplied to the Project, Farrey's recorded a construction lien on the Owner's property to secure its unpaid receivables in the amount of $853,773.16. Farrey's filed suit thereafter on May 20, 2016.

In its amended complaint, Farrey's sought, among other things, to enforce its construction lien against Coltin, the Owner, and VCC (count I).[3] In response, Coltin filed its answer, affirmative defenses, and counterclaims, which included an action to declare Farrey's claim of lien fraudulent and unenforceable under section 713.31, Florida Statutes (2016) (count IV). On February 8, 2017, Coltin filed a motion for partial summary judgment on count I of the amended complaint and count IV of the

_____

[2]For instance, in Coltin's second-revised purchase order dated on June 10, 2015, it appears that Coltin used the increased pricing from the June quote—instead of the lower pricing from the February quote—for item type "T19." This pricing was maintained in all of the following purchase orders, including the last purchase order, even though all of the purchase orders referenced only the February quote. We further note that the ninth-revised purchase order contains unit prices for various fixtures that do not correlate with the unit prices for those fixtures in either the February or June quotes.

[3]Farrey's unilaterally amended its initial complaint before any response was filed. Farrey's also raised a few other individual causes of action, including unjust enrichment against the Owner (count II), breach of subcontract against Coltin (count III), unjust enrichment against Coltin (count IV), and unjust enrichment against VCC (count V). Pursuant to a settlement agreement with the Owner and VCC, Farrey's voluntarily dismissed counts II and V.

counterclaim. Shortly thereafter, Farrey's filed its response in opposition to Coltin's motion for partial summary judgment, as well as a motion for leave to file a second amended complaint to add an alternative count for breach of an implied-in-fact contract. Coltin subsequently filed its objection to Farrey's motion for leave to file a second amended complaint.

As to the motion for partial summary judgment, Coltin relied upon the total cost listed in the ninth-revised purchase order and the February quote referenced therein to argue that partial summary judgment was warranted because Farrey's claim of lien exceeded the total agreed-upon cost. More specifically, Coltin contended that because it was undisputed (1) that Coltin had made payments to Farrey's in the amount of $825,417.06 throughout the course of the Project and (2) that the ninth-revised purchase order reflected a total cost of $1,647,362.41, Farrey's lien amount of $853,773.16 constituted a willful exaggeration of the amount Coltin owed to Farrey's. That is, because Farrey's total cost of materials as stated in its claim of lien ($1,679,190.22) exceeded the total cost of materials as stated in the ninth-revised purchase order ($1,647,362.41), Coltin argued that Farrey's deliberately overstated its claim of lien by nearly $32,000. Consequently, Coltin requested that the trial court invalidate the lien.

In its response, Farrey's argued that partial summary judgment was not warranted because there were genuine issues of material fact regarding whether the lien was fraudulent. Relying primarily upon the detailed affidavit of its employee and contract manager (the Maceiras affidavit), Farrey's asserted that its lien was not willfully exaggerated because the ninth-revised purchase order did not adequately account for

the total cost of the materials that it had actually supplied to Coltin. In fact, Farrey's asserted that the claim of lien was made in good faith, as its total cost for the materials supplied was based in part on its February quote and its revised June quote. According to the Maceiras affidavit, Coltin accepted the June quote because it required certain alternative fixtures that were not originally priced in the February quote. These alternative fixtures were allegedly delivered to and installed by Coltin. As a result, Farrey's contended that its claim of lien was made in good faith because any discrepancy between the total cost of the ninth-revised purchase order and the total amount of the claim of lien was due in part to Coltin's modifications to their original agreement.

On April 11, 2017, the trial court held a hearing on both Coltin's motion for partial summary judgment and Farrey's motion for leave to file a second amended complaint. At the hearing, counsel for Coltin first argued that summary judgment should be granted because the amount of Farrey's claim of lien was not the subject of a good faith dispute. Rather, Coltin's counsel contended that Farrey's filed its claim of lien in bad faith because it "completely ignored" the final agreed-upon cost in the ninth-revised purchase order. Coltin further asserted that Farrey's was attempting "to create a new contract based on new facts and in contravention of . . . the parol evidence rule." That is, Coltin asserted that the trial court could not consider the Maceiras affidavit because it was simply "prior, oral evidence" being offered to alter the clear terms of the complete and exclusive written agreement—i.e., the ninth-revised purchase order. As such, Coltin argued that because there "really [was] no good faith basis" for Farrey's to assert

that it had a different understanding of their written agreement, Coltin asked the court to grant partial summary judgment and "remove [the] lien."

However, Farrey's argued at the hearing that the parol evidence rule was simply inapplicable because "both parties dispute[d] what the contract [was]." Farrey's asserted that the ninth-revised purchase order was simply a modification of the original agreement and did not constitute the complete and exclusive agreement between the parties. Additionally, Farrey's argued that summary judgment was inappropriate at this stage because the Maceiras affidavit demonstrated how its claim of lien was filed in good faith. Finally, Farrey's asserted that even though the ninth-revised purchase order was signed by the parties and referenced the February quote, there was still a good faith dispute regarding the amount of the claim of lien because it was uncontroverted that Coltin received products that were not listed in the February quote.

After hearing from both sides, the trial court agreed with Coltin's arguments and granted the motion for partial summary judgment. It found that the parol evidence rule excluded consideration of the Maceiras affidavit and any other evidence outside of the ninth-revised purchase order and the February quote referenced therein. It reasoned that if Farrey's did not intend to honor the prices detailed in the February quote, then Farrey's should not have signed the ninth-revised purchase order. Upon granting the partial summary judgment, the trial court subsequently denied Farrey's motion for leave to file a second amended complaint to the extent it sought to plead a claim for breach of implied contract against Coltin. The trial court found that because the parties "had an express contract as a matter of fact and law in this case," parol evidence was not admissible to establish that Coltin had breached an implied contract.

On the same day of the summary judgment hearing, a document was recorded in Pasco County reflecting that Farrey's construction lien had been transferred from the property to a lien transfer bond under section 713.24, Florida Statutes (2017). The lien transfer bond was issued by Hudson Insurance Company (Hudson) as surety and Coltin as principal.[4] Upon learning of the existence of the lien transfer bond, Farrey's promptly moved to add Hudson as an indispensable party to the case before the trial court entered its written order granting partial summary judgment.

On April 24, 2017, consistent with its oral findings, the trial court entered a written order granting partial summary judgment in favor of Coltin on count I of Farrey's amended complaint and count IV of Coltin's counterclaim. The trial court concluded that Farrey's had both willfully exaggerated its construction lien claim and failed to establish a genuine issue of material fact demonstrating a good faith dispute as to the lien amount. In accordance with its previous rulings at the hearing, the trial court also later entered another written order denying in part Farrey's motion for leave to file a second amended complaint. The order granting partial summary judgment was later corrected to enter "final partial summary judgment." These orders were then timely challenged by Farrey's in cases 2D17-2172 and 2D17-2553.

On April 28, 2017, Coltin moved to release the lien transfer bond in light of the trial court's order granting partial summary judgment. The trial court granted Coltin's motion on August 25, 2017, and directed the clerk of the circuit court to release the

_____

[4]Coltin, not the Owner, was listed as the principal of the bond due to some form of agreement between Coltin, the Owner, and VCC that is not in the record.

bond.[5]  As to Farrey's motion to add the surety of the bond, Hudson, as an indispensable party, the trial court denied the motion.  These two orders became the subject of Farrey's third appeal in case 2D17-3191.

We hold that the trial court departed from the essential requirements of law in granting summary judgment based on its determinations that (1) the parol evidence rule excluded consideration of the Maceiras affidavit for the purpose of determining whether Farrey's construction lien was made in good faith and (2) the claim of lien was fraudulent and unenforceable as a matter of law and fact.  Accordingly, we grant the petition for writ of certiorari and quash the partial summary judgment and the order granting Coltin's motion to release the lien transfer bond.  In light of this ruling and its effect on the entire case, we dismiss the proceeding as moot to the extent Farrey's seeks review of both the order denying Farrey's motion to add an indispensable party and the order denying Farrey's motion for leave to file a second amended complaint.

**Discussion**

Review by certiorari is appropriate "when the following three elements have been established: '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.' "  Shindorf v. Bell, 207 So. 3d 371, 372 (Fla. 2d DCA 2016) (quoting Plantz v. John, 170 So. 3d 822, 824 (Fla. 2d DCA 2015)).  Material injury that cannot be corrected on appeal is also called "irreparable harm."  Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 721 (Fla. 2012) (quoting Belair v.

_____

[5]Though there is no document in the record indicating that the lien transfer bond was actually released, the circuit court clerk's "index on appeal" reflects that the bond was released.

- 10 -

Drew, 770 So. 2d 1164, 1166 (Fla. 2000)). Furthermore, "[a] departure from the essential requirements of the law means 'a violation of a clearly established principle of law resulting in a miscarriage of justice.' " Gator Boring & Trenching, Inc. v. Westra Const. Corp., 210 So. 3d 175, 184 (Fla. 2d DCA 2016) (quoting Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 889 (Fla. 2003)).

I. **Partial Summary Judgment and the Release of the Bond**

Because the entry of partial summary judgment and the connected order directing the release of the bond are nonfinal and nonappealable orders under Florida Rule of Appellate Procedure 9.110(k), Farrey's must demonstrate that it is entitled to certiorari relief to prevent dismissal of its appeal.[6] Consequently, the first issue is whether the trial court departed from the essential requirements of law in entering partial

---

[6]Before we can exercise jurisdiction over any partial final judgment under Florida Rule of Appellate Procedure 9.110(k), "we must ask: (1) whether the claim disposed of by the partial final judgment could be maintained independently of the remaining claims; (2) whether one or more parties were removed from the action when the partial final judgment was entered; and (3) whether the claims could be separately disposed of based on the same or different facts." Fla. Farm Bureau Gen. Ins. Co. v. Peacock's Excavating Serv., Inc., 186 So. 3d 6, 8-9 (Fla. 2d DCA 2015). The partial summary judgment entered on Farrey's count to enforce its construction lien is nonfinal and nonappealable because the pleadings reflect that Farrey's claim and the underlying facts are interrelated with its remaining causes of action against Coltin for breach of contract and unjust enrichment. See Gator Boring, 210 So. 3d at 180 (holding that an order granting partial summary judgment on a count to enforce a construction lien was nonfinal and nonappealable under rule 9.110(k) because the claim was "interrelated with the remaining claims"). It is also nonfinal and nonappealable because no parties were actually dismissed from the action when partial summary judgment was entered. See Harrison v. J.P.A. Enters., L.L.C., 51 So. 3d 1217, 1219 (Fla. 1st DCA 2011) ("Where all parties remain in a case after an order is entered, the order cannot be said to dispose of the 'entire case' as to any party for purposes of rule 9.110(k).").

summary judgment.  The second issue is whether such departure caused a material injury to Farrey's that is irreparable on plenary appeal.  Because we conclude that the trial court departed from the essential requirements of law and such departure would result in irreparable harm, we conclude that Farrey's is entitled to certiorari relief.  We shall address each issue in turn.

### A.  Departure from the Essential Requirements of Law

"Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, and (2) the moving party is entitled to a judgment as a matter of law."  Alderman v. BCI Eng'rs & Scientists, Inc., 68 So. 3d 396, 399 (Fla. 2d DCA 2011) (citation omitted).  "Further, 'if the record reflects the existence of any genuine issue of material fact, or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.' "  Gator Boring, 210 So. 3d at 182 (quoting Cook v. Bay Area Renaissance Festival of Largo, Inc., 164 So. 3d 120, 122 (Fla. 2d DCA 2015)).

It is well-established that the parol evidence rule prevents the terms of a valid written contract or instrument from being varied "by a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question."  J. M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So. 2d 484, 485 (Fla. 1957); see also Johnson v. Johnson, 403 So. 2d 1388, 1390 (Fla. 2d DCA 1981) ("All conversations and parol agreements between the parties prior to or contemporaneous with the written agreement are considered to have been merged therein so that they cannot be given in evidence for the purpose of changing the

- 12 -

contract or showing an intention or understanding different from that which is expressed in the written agreement.").  However, if there is a disagreement regarding "whether the particular writing is in fact a complete and accurate integration of the contract, the parol evidence rule is not applied[,] [a]nd no relevant evidence, parol or otherwise, is excluded."  Burgan v. Pines Co. of Ga., Ltd., 382 So. 2d 1295, 1296 (Fla. 1st DCA 1980).  Additionally, the parol evidence rule does not operate to preclude evidence of subsequent oral agreements modifying or changing the original agreement.  Johnson, 403 So. 2d at 1390 ("[A] subsequent parol agreement can always modify a written agreement."); see also Spann v. Baltzell, 1 Fla. 301, 352 (Fla. 1847) ("[I]n general, where an obligation is created merely by simple contract, it may, whether reduced to writing or not, be entirely dissolved by subsequent oral agreement.").  Nor does the rule exclude oral or extrinsic evidence for the purpose of showing fraud, accident, or mistake.  See Pentland v. Pentland, 113 So. 2d 872, 875 (Fla. 2d DCA 1959).

Here, the trial court clearly departed from the essential requirements of law by excluding the Maceiras affidavit in violation of the clearly established principle that the parol evidence rule does not exclude oral or extrinsic evidence of fraud, accident, or mistake.  Although the parol evidence rule operates to exclude evidence offered for the purpose of varying the terms of a written agreement, it does not bar extrinsic evidence offered for the purpose of showing whether the filing of a construction lien was made in good or bad faith.  This is a separate and distinct inquiry that does not trigger the parol evidence rule.  Thus, because the Maceiras affidavit was offered for the purpose of proving Farrey's good faith intent in filing its claim of lien, it was relevant evidence that should have been considered.  Indeed, the Maceiras affidavit explained

how Farrey's claim of lien was an accurate accounting of the materials it had supplied to Coltin throughout the course of the Project. This was sufficient to create a genuine issue of material fact as to whether Farrey's claim of lien was fraudulent. As such, partial summary judgment should not have been entered in favor of Coltin when disputed issues of fact remained. Cf. Bermont Lakes, LLC v. Rooney, 980 So. 2d 580, 587 (Fla. 2d DCA 2008) (quashing order granting partial summary judgment because genuine issues of material fact existed as to whether Trust exercised due diligence, which only requires a seller to act in good faith).

Furthermore, even if we assume, arguendo, that the ninth-revised purchase order was the complete and exclusive agreement between the parties, the trial court departed from the essential requirements of law in finding that Farrey's lien was willfully exaggerated simply because the claim of lien exceeded the total amount embodied in the ninth-revised purchase order. See Gator Boring, 210 So. 3d at 183 ("[A] lien is not to be deemed fraudulent merely because it is not embodied in a written contract or change order, so long as there is a good-faith basis for the claim." (quoting Delta Painting, Inc. v. Baumann, 710 So. 2d 663, 665 (Fla. 3d DCA 1998) (Cope, J., dissenting))); see also Sam Rodgers Props., Inc. v. Chmura, 61 So. 3d 432, 440 (Fla. 2d DCA 2011) ("A claim of lien that overstates the amount claimed is not necessarily fraudulent, unless the exaggeration is made willfully."); Vinci Dev. Co. v. Connell, 509 So. 2d 1128, 1132 (Fla. 2d DCA 1987) (stating that a dispute between the parties "as to the amount of compensation due according to the contract plan of compensation or even a dispute as to the method of compensation provided in the contract does not convert such a good faith dispute into a fraudulent lien as provided in section 713.31"

(emphasis added)). In fact, for a construction lien to be deemed fraudulent, the party asserting the fraudulent lien claim must show that the lienor

> [1] willfully exaggerated the amount for which such lien is claimed <u>or</u> [2] . . . willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lien <u>or</u> [3] . . . has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration . . . .

§ 713.31(2)(a) (emphasis added); <u>see also</u> <u>Gator Boring</u>, 210 So. 3d at 182 (recognizing that "[t]he party asserting that a claim of lien is fraudulent bears the burden of proving that the lien is fraudulent" and that the trial court's finding of a fraudulent lien is not a "discretionary matter" but rather must be supported by competent substantial evidence in the record). "[A] minor mistake or error in a claim of lien, or a good faith dispute as to the amount due does not constitute a willful exaggeration." § 713.31(2)(b).

Here, Coltin simply failed to show that Farrey's did not have a good faith dispute as to the amount of its claim of lien. The record reflects that Coltin failed to present any competent substantial evidence establishing that Farrey's willfully exaggerated the lien, claimed compensation for materials not furnished to the property, or filed its claim of lien with willful and gross negligence. At best, Coltin created a genuine issue of material fact regarding whether the amount of Farrey's claim of lien was properly calculated.

Additionally, the record and briefs reveal that the filing of Farrey's claim of lien was premised upon a contentious issue concerning what constituted the complete and binding contract. <u>Cf.</u> <u>Gator Boring</u>, 210 So. 3d at 183-84 (considering the briefs and the record to show that the subcontractor's claim of lien was actually based upon a "hotly contested" issue involving the legal construction of the subcontract). Indeed,

while Coltin contended that the ninth-revised purchase order was the complete and final memorialization of the parties' agreement because it was signed by both parties, Farrey's argued that the ninth-revised purchase order was simply a postcontractual modification of its original agreement. As such, Farrey's asserted that it could rely upon the Maceiras affidavit and other extrinsic evidence outside of the ninth-revised purchase order to establish (1) the full understanding of its contract and (2) the accuracy of its claim of lien for its unpaid receivables. These arguments, which were neither deemed frivolous or wholly without merit, certainly indicate that Farrey's had some good faith basis in filing its claim of lien.[7]

We therefore conclude that the trial court departed from the essential requirements of law in entering partial summary judgment based on its finding that Farrey's claim of lien was fraudulent and unenforceable as a matter of law and fact. Such departure resulted in a miscarriage of justice as the lien transfer bond was ordered to be released.

### B. Irreparable Harm

The next issue concerns whether the trial court's violation of a clearly established principle of law and conclusion that the lien was fraudulent resulted in irreparable harm to Farrey's. We conclude that Farrey's has demonstrated irreparable harm that warrants certiorari relief.

This court's prior decision in Gator Boring is instructive on what constitutes irreparable harm. There, the subcontractor (Gator Boring) filed a claim of lien against the general contractor (Westra) for failure to pay its increased costs that it claimed were

_____

[7]We further note that at oral argument, Coltin's counsel characterized the contract's formation as a "moving target."

- 16 -

due for changed circumstances on a drilling project. Id. at 178. The lien was transferred to a lien transfer bond underwritten by Travelers (the surety). Id. In its complaint, the subcontractor raised, among other things, a count for breach of contract for failure to pay for its increased costs and another count to enforce the lien. Id. The surety and the general contractor moved for partial summary judgment on both counts, arguing that the amount of the lien was willfully exaggerated because the terms of the contract precluded the subcontractor from collecting additional money based simply on the work being "more difficult and costly than anticipated." Id. at 179. The trial court agreed with their interpretation of the contract and found that the lien had been overstated by several hundred thousand dollars. Id. Consequently, the trial court found that the amount of the lien was fraudulent as it had been willfully exaggerated as a matter of law. Id. It then entered partial summary judgment in favor of the general contractor and surety and directed the clerk of court to release the lien transfer bond. Id.

On appeal, this court found that it had certiorari jurisdiction to review the partial final judgment. Id. at 181. We concluded that potentially losing the benefit of a recovery under a bond on a claim to enforce a lien constitutes the type of irreparable harm necessary to entitle a party to certiorari relief. Id. We reasoned that if the subcontractor had to wait until the end of the litigation to challenge the release of the bond and then prevailed on plenary appeal, the subcontractor "would be without a remedy on the bond." Id. Upon resolving the question of jurisdiction, this court held that the trial court departed from the essential requirements of law in finding that a reduction in the amount of the lien "automatically rendered" the lien fraudulent and unenforceable

- 17 -

as a matter of law.  Id. at 184.  Thus, we granted certiorari relief and quashed the partial summary judgment to the extent the trial court both entered judgment in favor of the general contractor on the claim to enforce the lien and directed the clerk of court to release the bond.  Id. at 184-85.

Here, Farrey's may also be irreparably harmed if it must wait until the end of the litigation to appeal the trial court's order granting partial summary judgment on count I of its complaint and count IV of Coltin's counterclaim.  This is because Farrey's, like the subcontractor in Gator Boring, may "lose the benefit of a recovery under the bond" if it ultimately prevails in this case.  See id. at 181.  In other words, "[t]he prospect that [Farrey's] will be left with a[n] . . . unsecured judgment is a harm which is irreparable on final appeal."  Bayview Const. Corp. v. Jomar Props., LLC, 97 So. 3d 909, 912 (Fla. 4th DCA 2012).  Indeed, Farrey's would be without a remedy on the bond against not only Coltin but also Hudson, as Farrey's motion to add Hudson as a party to the suit was denied.  And though Coltin contends that all of these points are essentially moot because the bond was released and we do not have the authority to order a nonparty surety to reinstate the bond, Coltin misunderstands the effect of our quashing the trial court's order granting partial summary judgment.

Though not in the certiorari context, the Fourth District's decision in J.M. Beeson Co. v. Sartori, 584 So. 2d 572 (Fla. 4th DCA 1991), illustrates that effect.  There, a construction company, J.M. Beeson, brought suit to foreclose upon two construction liens it had filed upon Sartori's property (a shopping plaza) and for breach of contract.  Id. at 572.  The construction liens were subsequently transferred from the property to a lien transfer bond pursuant to section 713.24.  Id.  The surety of the

- 18 -

transfer bond (Aetna), however, was not added as a party at that time. Id. at 573. The trial court later entered final judgment in favor of Sartori on the breach of contract claim and discharged the surety bond. Id. The construction company, in its first appeal,[8] challenged the final judgment, and the Fourth District reversed and remanded for further proceedings. Id. Upon remand, the trial court refused to reinstate the lien transfer bond. Id. As a result, the construction company added Aetna as a party to the lawsuit and amended its complaint to add two additional claims for relief against it. Id. The construction company and Aetna both filed competing motions for summary judgment on those two claims. Id. The trial court granted summary judgment in favor of Aetna, finding, in part, that because "Aetna was no longer the surety insurer of Sartori by virtue of the judgment that expressly provided for return of the bond," it could not reinstate the bond as it had been discharged by the prior judgment. Id. at 573. On appeal, the Fourth District again reversed the trial court's decision, holding that "the trial court erred when [it] failed to reinstate the bond after the first appeal concluded." Id. at 574. The Fourth District reasoned that the effect of its reversal on the construction company's first appeal "returned all matters pertaining to the mechanic's lien to their prejudgment status, including the status of the bond" as it was clearly pertaining to the mechanic's lien. Id. at 573. As such, the Fourth District remanded with directions to the trial judge to reinstate the surety bond. Id. at 574.

Here, like in Sartori, quashing the partial summary judgment will return this case to its prejudgment status. This means that on remand, all matters pertaining to Farrey's construction lien, which includes the status of the lien transfer bond, will be

_____

[8]J.M. Beeson Co. v. Sartori, 553 So. 2d 180 (Fla. 4th DCA 1989).

returned to their prejudgment postures. See id. at 573-74. Indeed, the idea is to put Farrey's back in the same position it would have been in had the partial summary judgment never been entered. See Broward County v. G.B.V. Int'l, Ltd., 787 So. 2d 838, 844 (Fla. 2001) (stating that when an order or judgment is quashed, "it leaves the subject matter, that is, the controversy pending before the tribunal, commission, or administrative authority, as if no order or judgment had been entered and the parties stand upon the pleadings and proof as it existed when the order was made with the rights of all parties to proceed further as they may be advised to protect or obtain the enjoyment of their rights under the law in the same manner and to the same extent which they might have proceeded had the order reviewed not been entered"); see also Snyder v. Douglas, 647 So. 2d 275, 279 (Fla. 2d DCA 1994) (stating that the effect of granting petition for writ of certiorari and quashing the erroneous order will allow the petitioners the opportunity to invoke its rights under a certain statutory provision "as if the order quashed had never been entered").

Thus, in light of our decision to quash the partial summary judgment entered in favor of Coltin, the trial court will need to revisit any ruling subsequent to its order granting partial summary judgment on April 24, 2017. This, of course, means that the trial court will have to revisit its order denying Farrey's motion to add Hudson as a party to the amended complaint and its order denying Farrey's motion for leave to file a second amended complaint. Accordingly, we conclude that Farrey's is entitled to certiorari relief because Farrey's has demonstrated that the trial court has departed from the essential requirements of law and that such departure has caused it material injury for the remainder of the case that is not correctable on plenary appeal.

- 20 -

Finally, as to Farrey's motion to amend its pleadings to add Hudson as an indispensable party and its motion for leave to file a second amended complaint to add a count for breach of an implied in fact contract, we remind the trial court that "[p]ublic policy favors the liberal amendment of pleadings, and courts should resolve all doubts in favor of allowing the amendment of pleadings to allow cases to be decided on their merit." Laurencio v. Deutsche Bank Nat'l Tr. Co., 65 So. 3d 1190, 1193 (Fla. 2d DCA 2011). We also note that sureties of a lien transfer bond are typically added as parties in a suit seeking to enforce a claim of lien. See, e.g., Hiller v. Phoenix Assocs. of S. Fla., Inc., 189 So. 3d 272, 274-75 (Fla. 2d DCA 2016); Gator Boring, 210 So. 3d at 178; Sartori, 584 So. 2d at 573. This is because a claim of lien is released from the property upon its transfer to a lien transfer bond under section 713.24. See Hiller, 189 So. 3d at 274 ("If an owner elects to file a transfer bond and complies with the statutory requirements to do so, 'the real property shall thereupon be released from the lien claimed, and such lien shall be transferred to said security.' " (quoting § 713.24(1))). In fact, as soon as the lien is transferred to the bond, the lienor has a limited amount of time to bring an action against the surety before the lienor's right to make a claim on the bond is extinguished. See id. at 275 ("[T]he failure to bring an action against the surety within a certain time period after the transfer results in the extinguishment of the right to make a claim on the bond." (citing N. Am. Speciality Ins. Co. v. Bergeron Land Dev., Inc., 745 So. 2d 359, 361 (Fla. 4th DCA 1999))). Accordingly, to prevent the loss of its right to recover on a lien transfer bond, a lienor should generally be allowed to amend its pleadings to bring an action against the surety.

Furthermore, as to Farrey's motion for leave to file a second amended complaint to plead an alternative count for breach of an implied-in-fact contract, we note that "refusal to allow amendment constitutes an abuse of discretion unless it <u>clearly</u> appears that allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile." <u>Grover v. Karl</u>, 164 So. 3d 1285, 1287 (Fla. 2d DCA 2015) (emphasis added) (quoting <u>Yun Enters., Ltd. v. Graziani</u>, 840 So. 2d 420, 422-23 (Fla. 5th DCA 2003)). To be futile, the proposed amendment must be either insufficient as a matter of law or insufficiently pled. <u>See Armiger v. Associated Outdoor Clubs, Inc.</u>, 48 So. 3d 864, 871 (Fla. 2d DCA 2010). And while it may be true that the existence of an express contract renders a proposed implied-in-fact contract theory insufficient as a matter of law, a finding of an express contract at the summary judgment stage cannot be premised upon a view of the evidence most favorable to the <u>moving</u> party. Indeed, here, it appears that the trial court improperly inferred that because the ninth-revised purchase order referenced the February quote and was signed by Farrey's, it was the final and express memorialization of the parties' agreement. Such an inference simply does not preclude at this stage the possibility that an implied-in-fact contract existed between the parties, especially considering Farrey's modification arguments and the course of conduct described in the Maceiras affidavit.[9] Thus, upon remand, the trial court should keep these facts and well-established principles in mind as it confronts these issues again.

_____

[9]Though not raised by the parties, we note that the ninth-revised purchase order did not contain a merger clause. <u>See</u> <u>Jenkins v. Eckerd Corp.</u>, 913 So. 2d 43, 53 (Fla. 1st DCA 2005) ("Although the existence of a merger clause does not *per se* establish that the integration of the agreement is total, a merger clause is a highly persuasive statement that the parties intended the agreement to be

## Conclusion

The trial court departed from the essential requirements of law in (1) violating a clearly established principle of law to exclude consideration of evidence offered for the purpose of showing a good faith dispute as to the amount of the claim of lien and (2) finding that the claim of lien was fraudulent and unenforceable as a matter of law based solely on the fact that the claim of lien amount exceeded the total cost of the alleged "final contract" (the ninth-revised purchase order).  As a result, the trial court caused Farrey's material injury—the loss of the potential recovery under the lien transfer bond—for the remainder of the case that cannot be corrected on plenary appeal.

Therefore, as to case 2D17-2172, we hereby quash the partial summary judgment entered in favor of Coltin and, in light of this ruling, dismiss as moot the order denying Farrey's motion for leave to file a second amended complaint.  As to case 2D17-2553, we dismiss the direct appeal challenging both the entry of final partial summary judgment and the order denying Farrey's motion for leave to file a second amended complaint as nonfinal, nonappealable orders.  Finally, as to case 2D17-3191, we hereby quash the order granting the motion to discharge the lien transfer bond and dismiss as moot the order denying Farrey's motion for leave to add Hudson as an indispensable party.  We remand for further proceedings consistent with this opinion.

Petition granted; orders quashed in part and dismissed in part.

CRENSHAW and ATKINSON, JJ., Concur.

---

totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms." (citation omitted)).